WALTER ALEXANDER COMPANY, Appellant, vs. TAX COMMISSION, Respondent.

*April 3—May 1, 1934.*

294

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Frederic Sammond,* all of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, and oral argument by *Mr. Naujoks.*

FRITZ, J. This appeal relates to two items assessed by the Wisconsin Tax Commission, for the purpose of taxation, as income of the appellant Walter Alexander Company in the years 1927 and 1928. One of those items is for $475,084.91, which the commission concluded was an unreported profit that had been realized by appellant October, 1927. In 1920, appellant was organized by Walter Alexander and his four children as a Wisconsin corporation, to hold and deal in securities and investments. Those five members of the Alexander family subscribed for $1,000,000 of capital stock, for which they turned over to appellant securities valued at their cost of $4,000,000. That gave the corporation a paid-in surplus of $3,000,000. Included in those securities were five hundred and fifty-six shares of the stock of the Wisconsin Valley Electric Company, which in 1920 were valued at $71,335. Subsequently appellant bought four hundred and three shares of that stock for $48,160.09, and thus increased the total value of its holdings of that stock to $119,495.09. On October 20, 1925, appellant entered into an agreement with most of the other stockholders of the Wisconsin Valley Electric Company, under which they deposited all of their holdings of that stock in trust with seven trustees, who were authorized to dispose thereof for the benefit of the depositors. Walter Alexander, who was then the president of the appellant corporation, was one of those trustees. On June 7, 1927, at special meetings

of the stockholders and of the directors of appellant, motions were adopted that the,—

"959 shares of common stock of the Wisconsin Valley Electric Company which stands on the records of this corporation at $119,495.09, be distributed to stockholders of record of June 7, 1927, as a partial liquidation of this corporation; that such distribution in partial liquidation is one of a series of distributions which will eventually result in the complete cancellation or redemption of all of the stock of this company outstanding."

On that date the estate of Walter Alexander held three thousand seven hundred and fifty shares and each of his four children held one thousand five hundred sixty-two and one-half shares of the stock of appellant, and, immediately after the adoption of those motions, the certificate, which the trustees who were holding that Wisconsin Valley Electric Company stock in trust, had issued to appellant for the nine hundred and fifty-nine shares to evidence the deposit thereof, was surrendered to the trustees in exchange for a separate certificate for each of appellant's stockholders for his respective portion of that stock. On the other hand, on the books of account of appellant that distribution of the nine hundred and fifty-nine shares was charged at their cost of $119,495.09 against the "Paid-in Surplus" account. In the year 1928 charges were likewise made against that "Paid-in Surplus" account which reduced that paid-in surplus to $1,186,114.73.

On June 11, 1927, the trustees entered into a contract with H. M. Byllesby & Company, under which the latter was given an option to purchase the stock of the Wisconsin Valley Electric Company, then on deposit with the trustees, at a price which ultimately netted $594,580 for the nine hundred and fifty-nine shares which appellant's stockholders owned. That contract was subject to approval by the Railroad Commission of Wisconsin and also subject to certain investigations which were to be made. Payment was to be made on

July 25, 1927. H. M. Byllesby & Company duly exercised that option and paid the purchase-price to the trustees, who in turn paid the $594,580, which they received on account of the nine hundred and fifty-nine shares originally deposited by appellant, directly to the five stockholders of appellant. As a result of that sale by the trustees to H. M. Byllesby & Company, the five stockholders received $475,084.91 in excess of the sum of $119,495.09, which was the original cost of those shares to appellant. No report of that profit, for purposes of taxation as income in this state, was ever made by appellant or any of its stockholders, and it appears that two of the latter were non-residents of this state at the time of the hearing before the Tax Commission in 1932.

On the other hand, there was evidence that, although appellant had received $895,000 in 1928 on the sale of other securities, it had paid to its stockholders in cash, as dividends, only $165,000 in 1928. In view of that evidence the Tax Commission concluded that on June 7, 1927, when appellant distributed to its stockholders its Wisconsin Valley Electric Company stock, on which that profit of $475,084.91 was realized, there existed no *bona fide* intention to liquidate, and that therefore that stock was not distributed in liquidation.

However that may be, the evidence establishes conclusively that on June 7, 1927, those nine hundred and fifty-nine shares were actually distributed as a dividend to appellant's stockholders. Even if that distribution was not made with the intention to liquidate, there was, nevertheless, an authorized, lawful, and executed distribution thereof as a dividend pursuant to and in accordance with appropriate corporate action. In view of the facts and circumstances that transaction on June 7, 1927, was neither a sale of that stock to appellant's stockholders, nor a transfer thereof to them in payment of any existing indebtedness owing by appellant to its stockholders. On the other hand, appellant never re-

ceived any part of the proceeds or profits finally realized by the distributees of that stock on the ultimate purchase and payment therefor by H. M. Byllesby & Company on October 19, 1927. Likewise, appellant was never given or entitled to any credit for either those proceeds or those profits, in discharge of any existing legal obligation on its part to its stockholders. Consequently, that transaction cannot possibly be reconstructed so as to admit of the conclusion that the distribution on June 7, 1927, constituted a sale by the appellant to its stockholders, with a resulting profit of which appellant was deprived by some such subterfuge as was resorted to by the corporation and its stockholders who were involved in the case of *Cliffs Chemical Co. v. Tax Comm.* 193 Wis. 295, 214 N. W. 447.

In that case there was no actual distribution of the corporation's assets to its stockholders as a lawful dividend. The transactions then under consideration were in form and in fact sales of all of the corporation's products to its stockholders in proportion to their respective holdings, at the actual cost thereof. Thus by preconcerted acts of the stockholders and their corporation, the latter was wholly deprived of the profits which it could have made, and which were in fact realized by its stockholders on their purchases from the corporation. It was not only conceded that the transactions were actually sales, and had been so entered on the corporate books, but it was also admitted that the corporation had in 1917 made the change in its methods as to its earnings for the very purpose of evading federal income taxes. Under those circumstances the manner in which that corporation conducted its business, by selling its products at less than the fair price which could have been otherwise obtained therefor, and thereby prevented itself from realizing the customary profits, was so obviously designed for the direct and exclusive benefit of its stockholders and the evasion of income taxes, that it was held proper for the Tax Commission,

regardless of the enactment of sec. 71.25, Stats. 1925, to look behind the scheme to the substance of the transaction, and by proper reconstruction thereof to assess income taxes on the basis of the real value of the distributed products. However, sec. 71.25, Stats., as well as that decision, is confined to the selling of a corporation's products or goods to its stockholders at less than the fair price which might otherwise be obtained therefor. It is only when there has been a disposition of corporate assets by "selling," and at less than the fair selling price, that sec. 71.25, Stats., is applicable.

Neither does the decision in *Morgan v. Wisconsin Tax Comm.* 195 Wis. 405, 217 N. W. 407, 218 N. W. 810, afford any precedent for assessing as income of appellant the profit realized by its stockholders on the Wisconsin Valley Electric Company stock. In that case the profit realized by the plaintiff Morgan, who was a stockholder of the Morgan Company, on stock of another corporation, which had been distributed to him by the Morgan Company as a dividend which it was distributing to its stockholders, was held assessable to Morgan, personally, because he had in fact received the resulting profit. Apparently no attempt was made to assess that profit to the Morgan Company, and the decision does not hold that the corporation, which had distributed the stock as a dividend to its stockholders, is liable for income taxes on profits thereafter realized by the distributees upon a subsequent sale of that stock. It follows that the circuit court erred in failing to order the correction of the assessment made against appellant by excluding therefrom the profit of $475,084.91 on the Wisconsin Valley Electric Company stock.

The other item, as to which appellant contends that the Tax Commission and the circuit court were in error, is an assessment for $28,845.17, which appellant had originally reported as "profit on sale of securities" in its return of income for the year 1928. An auditor of the Tax Commis-

sion had treated that item as dividends received by the appellant, but on a review the Tax Commission concluded that the item consisted in part of dividends and in part of profit. Appellant contends that that item is not taxable income in any event. That item of $28,845.17 consisted of the sum of $634, which appellant had received in 1928 as a two per cent premium on three hundred and seventeen shares of preferred stock of the par value of $100 per share, issued by the Silver Falls Timber Company; and the sum of $28,211.17, which appellant received in 1928 as the accumulated dividends, at seven per cent per annum, on that preferred stock. The evidence establishes that in 1915, and until 1920, Walter Alexander was the holder of common stock of that corporation. In order to obtain funds for its immediate needs from some of its stockholders, that corporation issued preferred stock with a seven per cent cumulative dividend, and also a provision that it was callable at a two per cent premium. In 1915 and 1917 three hundred and seventeen shares of that preferred stock were issued to Walter Alexander for $31,700, and in 1920 he transferred those shares, and also all of his common stock in that corporation, to appellant. From 1913 to 1928 that corporation operated at a loss and never paid any dividends. But, in 1928, it liquidated some of its capital assets and concluded to retire its preferred stock at $102 plus the seven per cent cumulative dividends, by issuing therefor its notes payable within six years, with six per cent interest; and the value of those notes is not claimed to be less than their face value. Accordingly appellant, in 1928, received for its three hundred and seventeen shares of preferred stock the notes of the Silver Falls Timber Company for $31,700, plus $634 as the two per cent premium, and $28,211.17 as the seven per cent cumulative dividends. That made a total of $60,545.17, and on account of those receipts appellant reported the item of $28,845.17 as profit in its 1928 return for income taxation. Since making that return, appellant contends that that sum of $60,545.17 was

but part of its total investment in the common and the preferred stock of that corporation; and that it probably will ultimately suffer a loss on account of that stock.

However, in point of time as well as in view of the differences in character of that stock, Walter Alexander's investments in that preferred stock were clearly separate and distinct from his prior investments in the common stock. Only a portion of the holders of the common stock of the Silver Falls Timber Company ever invested in the preferred stock, and it was only to those of its stockholders, who held some of that preferred stock, that the premium and accumulated dividends were paid upon the liquidation of the preferred stock in accordance with terms under which it was originally issued. The notes which were given by that corporation in liquidation of that preferred stock were not given on account of any holding of its common stock. The $634, which, as a two per cent premium, were clearly a profit, as well as the $28,211.17, which, as the accumulated dividends at seven per cent per annum, were clearly a dividend, were paid solely on account of the preferred stock; and all those payments were made solely in relation to that stock in compliance with the agreement made at the time of issuance thereof. Neither the premium, nor those dividends, were paid on account of any holding of common stock and there was no liquidation of that stock.

Appellant also contends that the exchange of the preferred stock for the corporation's notes was a tax-free reorganization within the meaning of sec. 71.02 (2) (i) 1, Stats., which, so far as here material, provides:

"No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation. . . ."

However, that statute is not applicable to the liquidation which is involved in this action. The notes which appellant received were merely for the premium and cumulative divi-

dends which the Silver Falls Timber Company had agreed to pay when it issued the preferred stock. They were not given in pursuance of a plan of reorganization. They were given in payment of the existing obligation to pay the cumulative dividends, and a two per cent premium in the event of calling in of the preferred stock, which was contemplated and therefore expressly provided when it first was issued. The mere calling in of the stock in accordance with provisions which attached thereto when it was issued, certainly did not constitute a reorganization of the corporation. Furthermore, as appellant did not claim that the notes were valued at less than their face, and as they bear interest at six per cent, they are to be deemed equivalent of cash (*Pinellas Ice Co. v. Commissioner*, 287 U. S. 462, 469, 53 Sup. Ct. 257), and as the receipt of cash,—as distinguished from "securities" as that term is used in sec. 71.02 (2) (i) 1, Stats.,—in payment of the obligation for the agreed premium and cumulative dividends. It follows that it was not error to include the item of $28,845.17 in the assessment for the year 1928.

*By the Court.*—Judgment affirmed, in so far as it relates to the inclusion of the sum of $28,211.47 in the taxable income of appellant for the year 1928; and reversed, in so far as it relates to the inclusion of the item of $475,084.91 in the taxable income of appellant for the year 1927, with directions to enter judgment for the correction of the assessment for taxable income of appellant by eliminating that item therefrom.