EDWARD C. SIMMONS II AND ST. LOUIS UNION TRUST COMPANY, AS EXECUTORS OF THE ESTATE OF WALLACE D. SIMMONS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD H. SIMMONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RICHARD W. SIMMONS, VIRGINIA W. SIMMONS AND ST. LOUIS UNION TRUST COMPANY, AS EXECUTORS OF THE ESTATE OF GEORGE W. SIMMONS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47210–47212. Promulgated April 3, 1935.

*Hal C. Bangs, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

324

## OPINION.

McMahon: At the hearing counsel for the respondent conceded error in holding that George W. Simmons transferred 155,500 Associated Simmons Hardware Cos. common shares to the Winchester-Simmons Co., since prior to that time he had transferred 40,000 shares to his wife and 40,000 shares to his wife as trustee for his children. George W. Simmons transferred 75,500 shares to the Winchester-Simmons Co. The respondent held that Edward H. Simmons transferred 175,500 Associated Simmons Hardware Cos. common shares to the Winchester-Simmons Co. However, the evidence shows that this was error on the part of the respondent. Prior to that time Edward H. Simmons had delivered to his wife, Mabel F. Simmons, and his daughter, Dorothy L. Simmons, each, a certificate for 50,000 common shares or interim receipts representing such shares, and he transferred to the Winchester-Simmons Co. 75,500 common shares in the transaction in question.

The respondent held that the transfers of Associated Simmons Hardware Cos. common shares by Wallace D. Simmons, Edward H. Simmons, and George W. Simmons to the Winchester-Simmons Co. in exchange for preferred stock of such company, " marketable securities " of other companies, and cash are governed by section 202 (c) (2) and (e) of the Revenue Act of 1921. He held that the three individuals had the right to exchange each share for preferred stock in the Winchester-Simmons Co. and $3.75 in cash, or, at their option, an equivalent amount of any marketable securities acceptable to them. He held that under these circumstances the fair market value of the securities received for each Associated Simmons Hardware Cos. common share in lieu of cash was equivalent to $3.75, the amount which, respondent held, was paid for such securities by the depositary, and held that gain was derived upon the transfer of each Associated Simmons Hardware Cos. common share in the amount of the excess of $3.75 over the basis. Respondent held that the basis was $2.0747 for each Associated Simmons Hardware Cos. common share, and it has been stipulated that this is the proper basis. Respondent, in his computation of gain derived, included no value for the preferred stock of the Winchester-Simmons Co. received by each of the individuals, but stated in the notice of deficiency that, upon the later sale or other disposition of such preferred stock, the full amount should be reported for income tax purposes. The petitioners

contend that the exchanges come within the provisions of section 202 (c) (1) of the Revenue Act of 1921. They claim that both the preferred stock of the Winchester-Simmons Co. and the common and preferred stock of other companies, which they received on the exchange, are of a like kind or use to the shares exchanged within the meaning of that section, and that the exchange to this extent is nontaxable. They admit that the cash received, less cash commissions paid therefrom, would be taxable if in excess of the basis, under the provisions of the second clause of section 202 (e), but point out that cash was not received in excess of the basis. There is set forth in the margin section 202 (c) (1), (2) and (e) of the Revenue Act of 1921.[1]

It should be pointed out that certain amendments made to section 202 (c) (1) and (e) of the Revenue Act of 1921 by an act of Congress approved March 4, 1923, are not applicable in the instant proceeding, since the act specifically provides that it should take effect January 1, 1923.

The respondent held that the depositary paid cash for these securities of other companies and, in effect, treated the transaction as one in which the individuals received cash and then purchased stocks of the other companies, rather than an exchange, in part, of the common participation shares for stock of the other companies. There is some evidence to indicate that it was contemplated that the depositary should buy stock of other companies suitable to the individuals. The letter of September 15, 1922, setting forth the proposal to the share-

---

[1] (c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use;

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporaton of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation, (however effected) ; or

\*          \*          \*          \*          \*          \*          \*

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the money or fair market value of such other property received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess.

holders of the Associated Simmons Hardware Cos. stated that in addition to the preferred stock of the Winchester-Simmons Co. there should be received for each Associated Simmons Hardware Cos. common share $3.75 in cash, or, at the option of the holder, marketable securities acceptable to the holder. However, it is apparent that this plan was not carried out. On the other hand, on September 26, 1922, the Winchester-Simmons Co. made separate written offers to each of the individuals, setting forth a list of the "marketable securities" of other companies which it offered to each such shareholder of the Associated Simmons Hardware Cos., together with cash and preferred stock of the Winchester-Simmons Co. The offer last made was accepted in each instance. In our opinion, it can not be said, in view of these circumstances, that the shareholders of the Associated Simmons Hardware Cos. received cash and then, with a portion of such cash, purchased stock of other companies. We, therefore, hold that there was an exchange of common shares of the Associated Simmons Hardware Cos. for preferred stock of the Winchester-Simmons Co. and preferred and common stock of other companies, together with cash.

The evidence shows to our satisfaction that the individuals held all their Associated Simmons Hardware Cos. common shares for investment, and that such individuals were not dealers in securities; and the question to be determined is whether the preferred stock of the Winchester-Simmons Co. and common and preferred stocks of the other companies received by the individuals from the Winchester-Simmons Co. were property of a like kind or use as compared with the common shares of the Associated Simmons Hardware Cos. which they exchanged therefor, within the meaning of section 202 (c) (1), or whether it was "other property" within the meaning of the second clause of section 202 (e). In *Richard T. Greene et al., Trustees,* 15 B. T. A. 401; affd., *Commissioner* v. *Greene,* 42 Fed. (2d) 852, we stated in part:

* * * We see no justification, for saying as a matter of law that for the purpose of this statute stocks and bonds are per se not property of like kind or use. The words can not fairly be regarded as importing distinctions which have no relation to the purpose of the statute. Stocks and bonds are both commonly regarded as investment property, and if in any case they are not so in fact it must be because the evidence so indicates. * * *

If the test lies in an identity of legal rights inherent in the property, the provision could be practically nullified. * * *

In, *Edson* v. *Lucas,* 40 Fed. (2d) 398, reversing *Margaret M. Edson,* 11 B. T. A. 621, the court stated:

* * * It seems reasonably clear that Congress intended that paper profits or paper losses resulting from the exchange of securities held for investment purposes, whether stocks or bonds, commonly known as "wash sales," should not be reflected in taxable income. It was evidently not intended that such

profits or losses, if resulting from an exchange of common stock for bonds, preferred stock, bonds with conversion privileges, profit-sharing certificates, debentures, beneficial certificates in common-law trusts, or other evidences of the obligations of or rights of participation in the profits or property of corporate or other entities which are known to the modern financial world and generally sold to the public as " investment securities ", should stand on any different basis than exchanges of stock for stock or bonds for bonds.

\*      \*      \*      \*      \*      \*      \*

To the same effect is *Girard Trust Co. et al., Executors*, 16 B. T. A. 308, petition for review dismissed on stipulation of the parties July 23, 1931, by the United States Circuit Court of Appeals for the Third Circuit in *Commissioner* v. *Girard Trust Co. et al., Executors*. See also *Ralph Andrew Applegate, Executor*, 10 B. T. A. 705; *Frank Filer*, 14 B. T. A. 1084; and *G. T. Wofford*, 15 B. T. A. 1225; petition for review dismissed by the United States Circuit Court of Appeals for the Fifth Circuit in *Lucas* v. *Wofford*, 49 Fed. (2d) 1027.

It will thus be seen that the words "like kind or use " employed in section 202 (c) (1) with regard to property held for investment have received liberal interpretation. Upon the authorities cited we hold that both the preferred stock of the Winchester-Simmons Co. and the preferred and common stocks of the other companies were property of a like kind or use as compared with the common shares of the Associated Simmons Hardware Cos. which were exchanged within the meaning of this section and that such stock was not " other property " within the meaning of the second clause of section 202 (e).

In so holding we have not overlooked the fact that the Associated Simmons Hardware Cos. is not and was not a true corporation, but a trust. At the hearing and on brief counsel for petitioners stated that the Associated Simmons Hardware Cos. is and was a so-called Massachusetts trust, and this statement was not challenged by the counsel for the respondent. The petitioners state on brief that it is and was an association taxable as a corporation; and no contention has been raised by the respondent that its shares are not property of a like kind or use as compared with stock of a true corporation, upon the grounds that its shares are in reality participation shares in a trust. On the contrary, the respondent, in his determination, has treated it as a true corporation, inasmuch as he held that these transactions amounted to a reorganization of a corporation under section 202 (c) (2). In any event, we consider the words " like kind or use ", as interpreted by the above cited authorities, as broad enough to cover the transactions in question in these proceedings.

In the deficiency notices the respondent stated that the stock of the outside corporations received by the individuals in exchange must be treated as " other property " because it was not " stock

or securities in a corporation a party to or resulting from such reorganization" within the language of section 202· (c) (2). The respondent thus determined that these transactions constituted a reorganization within the meaning of such section, but he has not favored us with any brief in support of his determination.

The petitioners contend that there was no reorganization, but that even if there were, the securities of the other companies which were received would not be taxable. We find it unnecessary to decide whether such securities of other companies would be taxable if there had been a reorganization, since, in our opinion, it is clear that there was no reorganization within the meaning of the statute.

Here the transactions between the Winchester-Simmons Co., on the one hand, and the stockholders of the Winchester Co. and the shareholders of the Associated Simmons Hardware Cos., on the other hand, did not constitute a true merger or consolidation, nor did they result in anything of the nature of a merger or consolidation. There was apparently no intention of accomplishing a merger or consolidation. We find it unnecessary to predicate these conclusions upon the facts that neither of the old companies was to go out of existence and that neither did. The Winchester-Simmons Co. did not acquire any of the preferred shares of the Associated Simmons Hardware Cos., nor did it acquire any of its assets. It appears that the Winchester-Simmons Co. was nothing more than a holding company, holding a large percentage of the common stock of the Winchester Co., and the common shares of the Associated Simmons Hardware Cos. Both the Winchester Co. and the Associated Simmons Hardware Cos. retained the assets which they had always held. There was no recapitalization, or mere change in identity, form, or place of organization of the Associated Simmons Hardware Cos. Upon principles enunciated in the following cases, we hold that there was here no reorganization within the meaning of section 202 (c) (2) of the Revenue Act of 1921: *Thomas W. White et al.*, 29 B. T. A. 1272, affirmed on this point Feb. 18, 1935, in *Fordyce* v. *Helvering*, 76 Fed. (2d) 431; *Thomas H. Redington*, 25 B. T. A. 707. See *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, and *Wilbur F. Burns*, 30 B. T. A. 163; and see discussion in *Alfred R. L. Dohme*, 31 B. T. A. 671.

Under section 202 (c) (1) and the last part of section 202 (e) none of the stock received in exchange is taxable, and, since the cash received (not exceeding 25 cents per share) was not in excess of the basis of the common shares of the Associated Simmons Hardware Cos., there was no taxable gain derived upon the transactions by any of the individuals with whom we are concerned. *Edwin Eisendrath et al., Executors*, 28 B. T. A. 744.

It is alleged in Docket No. 47210 that the respondent erred in twice including the cash received by Wallace D. Simmons in connection with the transfer of his Associated Simmons Hardware Cos. common shares to the Winchester-Simmons Co. An examination of the notice of deficiency discloses that the respondent did commit such an error. In view of our holding, however, that the cash received did not exceed the basis of the shares exchanged and that Wallace D. Simmons did not derive any taxable gain upon the transaction, this error of the respondent becomes of no consequence here.

*Decision will be entered under Rule 50.*