BEVERLY WALL PAPER COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82698. Promulgated July 20, 1937.

*John K. Hulse, C. P. A.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

## OPINION.

LEECH: Respondent has determined deficiencies in income and excess profits taxes in the respective amounts of $3,253.36 and $1,183.04 against petitioner for the calendar year 1933. The deficiencies arise through the increase by respondent of the net income of petitioner realized from the sale of its assets in the taxable year, due to his decrease of the cost basis to petitioner of the assets sold.

The parties have stipulated the facts and we include by reference the formal stipulation filed as our findings of fact.

The primary contention of the petitioner, that the assessment and collection of any deficiency is barred under the provisions of section

275 (b) of the Revenue Act of 1932 [1] will be disposed of first. It is stipulated that petitioner, on the face of its return filed for the calendar year 1933, placed a notation reading: "Final return—examination desired so that Company may dissolve." Following this, on April 23, 1934, the collector to whom the return was transmitted forwarded the same to the Commissioner, with a letter reading:

> There is enclosed herewith Form 1120 filed by Beverly Wall Paper Co., 1st National Bank Building, Beverly, New Jersey for the year 1933, serial number 850036, which is being forwarded to the Bureau promptly as the taxpayer desires a final examination in order that the company may dissolve.

On June 8, 1934, the petitioner wrote the collector calling attention to the fact that on its return it had asked an audit in order that it might wind up the affairs of the company, and asking that the matter be given attention. This letter was acknowledged by the collector on June 11, advising that the request for final audit had been forwarded to the Bureau of Internal Revenue for appropriate action. On October 24, 1934, the petitioner, for the first time, wrote the Commissioner of Internal Revenue. Its letter stated:

> Upon several previous occasions we have written the Camden office and your office, asking if we might have an audit of the income tax report of the Beverly Wall Paper Company, Beverly, New Jersey, filed at Camden last February, as we.are axious to wind up the affairs of this Company.
>
> Upon inquiry at Camden, we were advised that this matter is in the hands of your office.

This letter was acknowledged on October 26, 1934, by the Commissioner, advising that the return of petitioner had been forwarded to the revenue agent at Newark, New Jersey, and the matter would be given attention upon receipt of his report.

Following this, the Commissioner, on April 8, 1935, proposed a deficiency of $1,165.24, and extended an opportunity for a hearing, and after a conference on June 14, 1935, denied by letter of October 5, 1935, petitioner's contentions with respect to the proposed deficiency

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—

\* \* \* \* \* \* \*

(b) REQUEST FOR PROMPT ASSESSMENT.—In the case of income received during the lifetime of a decedent, or by his estate during the period of administration, or by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within one year after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, or by the corporation, but not after the expiration of two years after the return was filed. This subsection shall not apply in the case of a corporation unless—

(1) Such written request notifies the Commissioner that the corporation contemplates dissolution at or before the expiration of such year; and

(2) The dissolution is in good faith begun before the expiration of such year; and

(3) The dissolution is completed.

and enclosed a consent for execution. In this letter the Commissioner stated:

On October 24, 1934 you requested that an early audit of your income tax return be made since you were "anxious to wind up the affairs of this company." Although section 275 of the Revenue Act of 1932 was not mentioned, it is believed that that was your intention; therefore, under that section of the law the statutory period of limitation for assessment of additional tax on your return would expire on October 24, 1935.

Petitioner was advised that the waiver should be executed within five days, otherwise a notice of the final deficiency would be issued. The waiver was not executed by petitioner and the notice of deficiency here involved was mailed October 24, 1935.

It is petitioner's contention that the notation, made upon its return filed for the calendar year 1933, constituted a request for prompt assessment under section 275 (b) of the Revenue Act of 1932, but that if this is not so, the letters following this, sent to the collector and calling attention to the request made on the return, constituted a sufficient request and that the notice of deficiency, having been mailed more than twelve months subsequent thereto, assessment and collection are barred.

Section 275 (b) is specific. A taxpayer corporation is entitled to the benefit of the limited time for assessment and collection, only, where it has notified the Commissioner, in writing, that it contemplates dissolution at or before the expiration of the year. Notice to this effect is not shown by the record to have been given by petitioner in any letter sent by it, either to the collector or to the Commissioner nor by the notation made by petitioner upon its return.

The facts here are clearly distinguishable from those involved in *Maffitt* v. *Becker*, 65 Fed. (2d) 880, in which the court held that a formal request for prompt assessment of a decedent's income tax, made by the executor and attached to the return filed by the latter, was a sufficient notice to set in motion the one-year limitation provided by section 275. That case involved the estate of a decedent and the cited section required merely a request for prompt assessment. The specific information required by the statute to be included in such request filed by a corporation, and lacking in the so-called request here, was not there required. It was not questioned in that case that the request was in proper form since it asked for prompt assessment and stated that it was made under section 275. The only question raised was whether its presentation to the collector simultaneously with the return, constituted a filing "after the return", in compliance with the statute. The court held that, on such facts, the showing that the attention of the collector was called, specifically, to the fact that the request was being made, and that

the request was accepted without question by the latter, it would be presumed that the acts of filing the return and presenting the request were done in the order required, there being no indication that it was presented before the return was filed.

In the present case the first letter addressed by petitioner to the Commissioner, on October 24, 1934, merely states that the company is anxious to wind up its affairs and fails to give the specific information required by section 275 (b), but it was construed by the Commissioner to be an attempt to comply with that section and was accepted as a sufficient notice. The record shows that the final notice of deficiency was mailed within one year from the date of this letter and we hold that assessment and collection of the deficiency are not barred.

Briefly stated, the facts with respect to the second issue are that petitioner is a corporation organized in 1932. All of its capital stock was issued in exchange for property jointly owned by three corporations, H. G. Craig & Co., Macrae & Rose Print Cutting Co., and the First National Bank & Trust Co. of Beverly, New Jersey. Petitioner's capital stock was issued to these three corporations in proportion to their interest in the property acquired. The three named corporations acquired the property conveyed to petitioner by purchase from a receiver in bankruptcy appointed for Robert F. Hobbs, Inc. The consideration paid by these three corporations for the assets was $14,955 in cash and the assumption of a mortgage on the property of $38,000.

The circumstances under which this acquisition of property occurred were that the three named corporations were the largest creditors of Robert F. Hobbs, Inc., when that company was adjudged bankrupt. Their allowed claims aggregated the sum of $79,355.51 out of a total indebtedness of the bankrupt of $107,000. The three named corporate creditors, upon the sale of the bankrupt property, conceived the plan of jointly buying this property with the purpose of selling it at a profit and recouping, to that extent, the loss which they would sustain on the debts due them. They accordingly bid in the property for the amount above set out, which was contributed by the corporate creditors in proportion to the individual claims of each. The amount paid for the assets was distributed by the receiver in bankrutcy to the creditors and these three purchasers of the assets received as creditors of Robert F. Hobbs, Inc., their proportionate distribution of the amount realized by the receiver on the sale.

On acquiring this property, the three corporations conveyed it to the petitioner, which they had caused to be organized, receiving in exchange all the capital stock of petitioner issued to them individually in the proportion of their interests in the property.

In the following year the petitioner sold this property for a total of $80,765.98, or $27,810.98 more than the total consideration paid for those assets upon their purchase from the receiver in bankruptcy.

In computing its income for the calendar year 1933, petitioner used as a cost basis of the assets sold, the amount of the indebtedness of the three corporate creditors of Robert F. Hobbs, Inc., plus the consideration paid the receiver in bankruptcy for the assets, less the amount of $9,649.63 distributed to these three creditors as a dividend upon their allowed claims. In determining the deficiency respondent has used as the cost basis of the assets the figure at which they were acquired from the receiver in bankruptcy, or $14,955 cash, plus a mortgage assumed of $38,000, or a total of $52,955.

It is urged by petitioner that the purchase of these assets by its three organizers was merely an incident in their refinancing and adjustment of the indebtedness due them from Robert F. Hobbs, Inc.; that the entire transaction must be considered as a whole; that the unrecouped balance of the indebtedness due from Hobbs to the three represents a cost to them of the assets acquired; and that this is the cost basis to be used by petitioner in computing gain or loss on the resale of those assets.

Petitioner's contention can not be sustained. The transaction does not fall within the reorganization provisions of the statute. The three named corporations, creditors of Robert F. Hobbs, Inc., were merely general creditors of that company and had no investment therein. The rule is well established that continuity of investment interest is essential to all tax deferment under the reorganization provisions. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; and *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599. It may be said in addition, however, that even had these three corporations been stockholders in the bankrupt corporation, a purchase by them for cash at the receiver's sale of the bankrupt assets at a sale for less than the amount of the corporate indebtedness would not establish continuity of the original investment in a corporation to which the acquired assets were transferred by them for stock. *Petree* v. *United States*, 34 Fed. (2d) 563; affd., 41 Fed. (2d) 517.

In the present case these three corporations were merely the purchasers of the assets sold by the receiver. The fact that they were creditors of the bankrupt corporation had no bearing on that purchase because their claims against the bankrupt constituted no part of the consideration paid. The basis to them for gain or loss upon the sale of these assets was the cost in their purchase from the receiver in bankruptcy, and these assets having been transferred to the petitioner in exchange for all of the capital stock issued to the owners of the assets in proportion to their ownership therein, the

basis for gain or loss to petitioner upon the sale of those assets is their cost to these three stockholders, under sections 112 (b) (5) and 113 (a) (8) of the Revenue Act of 1932.[2] *Farmers Cotton Oil Co.*, 27 B. T. A. 105.

One of the deficiencies determined by the respondent is for excess profits tax in the sum of $1,183.04. Upon the hearing it was admitted by counsel that subsequent to the determination of this deficiency the petitioner had filed an amended capital stock return upon which it had declared a value and paid a tax, and that this would require a recomputation of excess profits taxes. The necessary correction in the excess profits tax determination should be made in the recomputation of the deficiency.

*Judgment will be entered under Rule 50.*

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.