Alfred T. Scully v. Commissioner. Walter J. Scully v. Commissioner.
Scully v. Commissioner
Docket Nos. 83418, 83419.
United States Tax Court
T.C. Memo 1961-243; 1961 Tax Ct. Memo LEXIS 104; 20 T.C.M. (CCH) 1272; T.C.M. (RIA) 61243; August 30, 1961
*104 Held, the Commissioner's adjustment to the loss reported on the partnership return of a partnership of which the petitioners were each 50 percent owners, by adding as ordinary income $12,600 carried as inventory of raw materials by the partnership when it sold its assets to another corporation and retired from the blacktop business, is approved. Held, further, the adjustment made by the Commissioner to the loss reported by the partnership on its return by adding as capital gain the profits from a sale of equipment to a former employee is sustained. k5enneth R. Hughes, Esq., First National Bank *105 Bldg., Cincinnati 2, Ohio, for the petitioners. J. Pitts Vick, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These cases have been consolidated. The Commissioner has determined deficiencies in petitioners' income tax as follows: Docket
Number
Petitioner
Year
Deficiency
83418
Alfred T. Scully
1955
$ 2,355.62
1956
6,636.50
1957
22,599.89
83419
Walter J. Scully
1955
2,559.62
1956
6,670.11
1957
23,031.90 No contest is made by either petitioner as to the deficiencies for 1955 and 1956; these deficiencies have been assessed and paid. Each petitioner assigns error as to the Commissioner's determination of the deficiency for 1957, as follows: (a) The Commissioner erred in computing petitioner's distributive share of operating loss from Scully Brothers, a partnership, for the taxable year ended December 31, 1957 as $14,506.24 instead of $30,564.28. Findings of Fact The parties have stipulated the following facts: 1. The petitioners, Alfred T. Scully and Walter J. Scully, are brothers who reside in Cincinnati, Ohio. Since 1912, they have operated a business as a partnership under the *106 name of Scully Brothers, in which they were fifty percent (50%) partners. The business consisted of manufacturing bituminous concrete, hereinafter referred to as blacktop, at three separate plants in Hamilton County, Ohio, and general contract roadbuilding and investments. This blacktop was used in their general contract roadbuilding and was also sold at retail. 2. The partnership kept its records and filed its return on a cash basis of accounting, except that it did not report costs allocated to incompleted contracts nor the receipts from such contracts to the extent of the nonreported cost. 3. On January 3, 1957, Scully Brothers entered into an agreement with Allied Chemical & Dye Corporation, a New York corporation, providing for the sale for $500,000.00 of the blacktop business, including all of its inventory, land, plant and certain equipment, less accounts receivable. The date set for the conveyance of the property and the payment by cashier's check of the purchase price was February 15, 1957; and on that date, the property was conveyed and the certified check was received. The partnership did continue in business otherwise throughout the remainder of 1957, and through the *107 present date. Pursuant to an escrow agreement executed on February 12, 1957, and a provision in the agreement of January 3, 1957, $10,000.00 of the purchase price was placed in escrow pending final settlement of any and all actual or potential claims against Scully Brothers. This money was held in escrow until June of 1958, when the escrow agreement was terminated. * * * 4. The sale of this business was not reflected in the partnership return for 1957, nor in the individual partner's income tax return for that year. The Commissioner determined a capital gain from the sale of the business in the amount of $235,843.77, computed as follows: The purchase price of $500,000.00 was reduced by the amount of $10,000.00 held in escrow, the expenses of the sale is $5,313.85, and the amount of the inventory included in the sale of $12,600.00 leaving a total adjusted sales price for the capital assets of $472,086.15. The adjusted basis thereof was $236,242.38, which reduced the proceeds from the sale to a capital gain of $235,843.77. This resulted in the increase in the individual partner's distributable share of capital gain from the sale of the business to $58,960.94. The gain was treated as *108 a long term capital gain under Section 1231 of the Internal Revenue Code of 1954. 5. The inventory which was included in the sale of the business represented raw materials used in the business located at the taxpayers' three plants and was valued at $12,600.00. The Commissioner, in the statutory notice, deducted from the cost of goods sold the raw materials inventory of $12,600.00. 6. The petitioners also sold in 1957 certain construction equipment to Mr. J. A. Seta, a former employee, for the price of $16,000.00. They received during the year cash in the amount of $5,500.00, and promissory notes executed by the purchaser in the amount of $10,500.00. The sale of this equipment was likewise not reported in the partnership returns nor the returns of the individual partners. The Commissioner, after giving effect to the basis of these assets in the hands of the partners of $8,463.87, determined a net capital gain to the partnership of $7,536.13. The individual partner's distributable share of this capital gain under 1954 Code Section 1231 amounted to $1,884.04. 7. During the operation of the partnership business, Scully Brothers maintained accounts receivable, *109 accounts payable and accounts covering inventory of raw materials, finished goods and work in process. These various accounts were not taken into account by the partnership in computing the partnership's income for Federal tax purposes. The partnership had recorded in its books and records at the dates below indicated accruals for inventories, accounts receivable and accounts payable, as follows: Inven-
Accounts Re-
Accounts
Dates
tories
ceivable
Payable
12-31-53 *
$12,259.00
$105,529.87
$13,951.55
12-31-56
12,600.00
127,808.76
67,322.89
12-31-57
None
45,839.62
440.16
Petitioners introduced in evidence the 30-day letter from the office of the District Director of Internal Revenue Service, Cincinnati, Ohio. To this 30-day letter was attached a revenue agent's report. It was admitted in evidence for the limited purpose of showing how the Commissioner determined the deficiencies. From an examination of all the facts we find that the Commissioner's determination of capital gain resulting from the sale by the partnership of certain capital assets was made by the adoption in his deficiency notice *110 of the recommendations made in the revenue agent's report. That report shows the following computation of profits resulting from the sale of capital assets: Total sales price
$500,000.00
Less: Amount held in es-
crow
$10,000.00
Amount allocated to
inventory
12,600.00
Expense of sale
5,313.85
27,913.85
Proceeds of sale received in 1957
$472,086.15
Adjusted basis of lands, plants and
equipment
236,242.38
Profit from sale
$235,843.77
We also find that the Commissioner adopted the report of the revenue agent with respect to the sale of certain equipment to a former employee of the partnership by the name of Seta. This revenue agent's report shows: Sale of equipment - Seta
Sales Price
$16,000.00
Total adjusted basis
8,463.87
Net Profit from Sale
$ 7,536.13 The revenue agent's report had the following explanation with reference to the computation of capital gain realized by the partnership as the result of the transaction with Allied Chemical & Dye Corporation: The Partnership had on hand $12,600.00 worth of raw material inventory on hand at the time of the sale of the blacktop business to Allied Chemical & Dye Corp. *111 This amount already had been charged to the cost of goods sold for tax purposes. To record the sale of the blacktop business in its entirety the amount of inventory sold should be added to gross receipts for that year and the sales price for computing capital gains should be reduced accordingly. * * * The revenue agent's report also gave as a reason for his recommendation that $7,536.13 be added as net profit from the sale of certain equipment to Seta, the following: The Partnership sold several pieces of road construction equipment to a former employee named Seta in 1957. Seta paid $5,500.00 down in cash and gave notes for $10,500.00 to make a total sales price of $16,000.00. The partnership did not report this transaction as a sale on their tax return filed for 1957. This adjustment is made to classify this transaction as a completed sale for tax purposes, the gain from which would be a long term capital gain. * * * Opinion BLACK, Judge: From the facts which we have given above it will be seen that petitioners operated a blacktop manufacturing business and built roads under the name of Scully Brothers in the Cincinnati, Ohio, vicinity. They were 50 percent partners therein. *112 In their income tax returns for the year 1957 the petitioners reported their distributable share of the loss reported by the partnership from business operations. However, neither they nor the partnership reported for that year the sale on February 15, 1957, of the blacktop business from which a substantial capital gain was unquestionably realized. In his determination of the deficiencies for 1957, respondent has made two adjustments which are in dispute and they have been described in our Findings of Fact. Petitioners do not object to the inclusion in the partnership income of the capital gain which resulted to the partnership from the sale to the Allied Chemical & Dye Corporation of the blacktop plants and equipment. In fact, so far as we can see there is no dispute as to the amount of capital gain which resulted from this sale. But petitioners do object to that part of the deficiency notice wherein the Commissioner reduced the cost of goods sold by the closing inventory of raw materials in the amount of $12,600. They also object to the inclusion in their income for 1957 of certain capital gains which the Commissioner has determined resulted from a sale to a former employee of *113 the partnership of certain construction equipment. The facts in connection with this latter transaction have also been given in our Findings of Fact. It is petitioners' contention that the two above-described adjustments which the Commissioner has made place the partnership on the accrual basis and that, therefore, further adjustments should be made which would place the partnership on a true accrual system for 1957. Respondent disclaims any intention to place the partnership on an accrual basis. He saye that the partnership, with certain exceptions, filed its returns on a cash receipts and disbursements basis of accounting and that he has no desire to disturb that method. He contends that the adjustments which he has made were justified by the facts and did not disturb the accounting system which the partnership had always used, including the year 1957. We are convinced from the record that the respondent had no intention or purpose of disturbing the accounting system which the partnership had always used. He was merely making adjustments to the loss shown on the return filed by the partnership which would make proper adjustments and reflect sales which had been made in the taxable *114 year and had not been reported. We shall, therefore, take up the two adjustments which are in controversy and decide the dispute which has arisen as to these two adjustments. We shall first take up the so-called inventory adjustment of $12,600 which has been made. We think the facts in the record disclose the correctness of this adjustment. It has been stipulated that in 1957 the partnership sold its blacktop plants, equipment, and an inventory of raw materials which amounted to $12,600, all for $500,000. The amount which was received in this transaction is not in dispute. In our Findings of Fact we have given the details of how the respondent has computed the capital gain which resulted from the sale. The inventory which was sold for $12,600 is removed from the computation of the amount of capital gain. Manifestly this was proper because the inventory was property held primarily for sale in the ordinary course of the partnership business. See section 1231(b)(1)(A), 1954 Code. If it had not been taken out of the computation, then the capital gain resulting from the sale would have been $12,600 greater than was computed. The method used by the Commissioner in his adjustment, as *115 we see it, merely treats this $12,600 as ordinary income and not as capital gain. We think that was proper. As respondent says in his brief: Since the road building and manufacturing business had terminated, it is clear that the adjustment was not one of establishing an inventory for and to be used in a continuing business. The adjustment, therefore, did not initiate a change in the partnership's method of accounting as contended by the petitioners. To the contrary, respondent has not taken exception to the method of accounting employed by the partnership for the year in question nor for any year prior thereto. Respondent is sustained as to this adjustment. As has already been pointed out in our Findings of Fact, the partnership sold certain miscellaneous construction equipment in the year 1957 for an agreed price of $16,000. During the year 1957 the partnership received cash in the amount of $5,500 and promissory notes executed by the purchaser in the amount of $10,500. Our Findings of Fact show that respondent, in his computation of capital gain on this transaction, treated the promissory notes executed by Seta, $10,500 their face value, as other property received in the sale. *116 We think this was proper and was not an act on the part of the Commissioner which placed the partnership on an accrual basis, as petitioners contend. Where property is exchanged for cash and promissory notes, income is realized to the extent that the cash, plus the fair market value of the notes, exceeds the adjusted cost or other basis of the property. Cf. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462. We have no evidence in this proceeding, stipulated or otherwise, that Seta's promissory notes were not worth their face value when received. If they had a fair market value less than their face value or if they had no fair market value at all, it was the burden of petitioners to show that fact and not that of the Commissioner. Decisions will be entered under Rule 50. Footnotes
*. Apparently this date should be 12-31-55.↩