Frank M. McNab, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

William H. Schmidt, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Rosemarie Macbeth, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Carrie S. Protheroe, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 58083, 58084, 60502, 66957.   Promulgated October 11, 1935.

*Melvin D. Wilson, Esq.*, and *Joseph D. Peeler, Esq.*, for the petitioners, Frank McNab, William H. Schmidt, and Rosemarie Macbeth. *Thomas R. Dempsey, Esq.*, for the petitioner, Carrie S. Protheroe. *Ralph E. Smith, Esq.*, for the respondent.

#### OPINION.

Smith: These proceedings, consolidated for hearing, involve deficiencies in income tax for the year 1927 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Frank M. McNab | 58083 | $695.65 |
| William H. Schmidt | 58084 | 116.56 |
| Rosemarie Macbeth | 60502 | 40,013.25 |
| Carrie S. Protheroe | 66957 | 923.29 |

In Docket No. 66957 the deficiency constitutes petitioner's liability as transferee of the assets of the estate of Thomas J. Protheroe, Los Angeles, California, under section 280 of the Revenue Act of 1926.

The sole question involved in all of these proceedings is whether the bonds of the Southern California Gas Corporation (hereinafter called Gas Corporation) received by petitioners (in Docket No. 66957 received by the petitioner's transferor) in exchange for shares of common stock of the Southern California Gas Co. (hereinafter called Gas Co.) are to be treated as received in a tax-realizing reorganization, or as received in a nontax-realizing reorganization.

The facts are contained in a signed stipulation of the parties, which may be briefly summarized as follows:

Petitioners are all individuals residing in Southern California. All of them held shares of common stock of the Gas Co. which they exchanged on November 17, 1927, for cash and bonds of the Gas Corporation, under conditions hereinafter set out.

In 1927 there were two existing corporations, the Gas Co. and the Midway Gas Co. (hereinafter called Midway), which were incorporated under the laws of the State of California on October 5, 1910, and November 11, 1911, respectively. The former was principally engaged in distributing natural and artificial gas to retail and industrial consumers and the latter in purchasing natural gas in the oil fields, transporting it to cities and selling it to distributing companies.

Under date of October 17, 1927, an agreement was entered into between some of the larger stockholders of the Gas Co. and Midway, and a syndicate of bankers composed of the Chase Securities Corporation, Stone & Webster, Inc., Hunter, Dulin & Co., and Pynchon & Co., which provided, among other things, that (1) the Gas Co. should acquire the properties and business of Midway for capital stock and bonds of the former, and (2) that a new corporation should be organized which should acquire all, or practically all, of the common stock of the Gas Co. and all of the capital stock of Midway for cash and bonds of the new company.

On October 4, 1927, Midway adopted resolutions authorizing the sale of its properties and business to the Gas Co. These resolutions provided that it was the plan of the board of directors that:

\* \* \* said common capital stock and said bonds of the Southern California Gas Company to be received from Midway Gas Company assets shall be distributed to the stockholders of this corporation when, as and if received by this corporation and as soon as such distribution may lawfully be made.

On October 17, 1927, the Gas Co. had issued and outstanding 240,000 shares of common stock of the par value of $25 a share, and 182,226 shares of preferred stock of a par value of $25 a share. Both classes of stock had equal share voting rights. On said date Midway had issued and outstanding 23,264 shares of capital stock of a par value of $100 a share, all fully voting common stock.

On October 31, 1927, the Gas Co. acquired all of the properties and business of Midway as of August 31, 1927, in consideration of a new issue of 80,000 shares of its capital stock of a par value of $25 a share, and $2,942,000 face value of a new issue of bonds of said Gas Co., due in 1957, and the assumption of Midway's liabilities. Immediately after this transaction and throughout the remainder of 1927 the Gas Co. had outstanding 320,000 shares of common capital stock and 182,226 shares of voting preferred stock.

In accordance with the terms of the agreement of October 17, 1927, a new corporation, the Gas Corporation, was organized under the laws of the State of Delaware on November 12, 1927. This corporation had an authorized capital stock of $16,500,000, consisting of $7,500,000 preferred and $9,000,000 common stock, all of which was issued and outstanding on November 17, 1927. On the last named date it acquired under the provisions of contracts of October 17 and November 17, 1927, and certain deposit agreements referred to in the contracts, 23,121 shares out of a total of 23,264 shares of the capital stock of the Midway Gas Co., and 239,608 out of a total of 320,000 shares of the outstanding common stock of the Gas Co. for cash and bonds of the Gas Corporation.

On November 17, 1927, the Gas Corporation issued for the shares of stock of Midway and the Gas Co. bonds having a par value of $24,942,000. Virtually all of the remaining $58,000 face value of the bonds of that issue were subsequently issued in the acquisition of the remaining common shares of stock of the two companies. The shares of stock of the Gas Co. and Midway acquired by the Gas Corporation as herein set forth were deposited with a trustee as collateral for the bonds issued as partial consideration therefor. On November 17, 1927, the board of directors of Midway declared a dividend of $2,942,000 and paid the same in temporary certificates of the first mortgage and refunding gold bonds, 5 percent, " due 1937 (sic)" of the Gas Co.

These bonds were sold on November 17, 1927, at 95, and the proceeds therefrom were used by the Gas Corporation in the acquisition of the shares of stock of Midway and the Gas Co., as aforesaid.

On December 10, 1927, Midway distributed the 80,000 shares of common stock of the Gas Co. to its stockholders. The Gas Corporation received 79,508 of the 80,000 shares of the common stock of the Gas Co. Midway did no business thereafter, but retained its charter until March 31, 1934, for the purpose of settling its income taxes for prior years.

After the acquisition of the 319,116 shares of the common stock of the Gas. Co. by the Gas Corporation as aforesaid, the Gas Co. continued and (still continues) its corporate existence. Its operations were enlarged, as it then had the gas-gathering and transporting assets formerly owned by Midway. There were some changes in its directory management.

Pursuant to the agreement of October 17, 1927, as modified by an agreement dated November 17, 1927, petitioner Rosemarie Macbeth received for her 3,996 shares of common stock of the Gas Co. $234,-195.57 cash and bonds of the Gas Corporation of the par value of $308,393.30 and of the fair market value of $286,017.70. The $234,-

195.57 was the amount of cash payable to petitioner Rosemarie Macbeth after deducting $1.375 per share brokerage commissions and her share of other expenses of carrying out the transaction. She reported in her 1927 return a profit of $234,195.57, being the amount of the cash received. She did not in 1927 sell or otherwise dispose of any of the bonds of the Gas Corporation received for her stock. The respondent adjusted her income for 1927 by increasing the same in the amount of $286,017.70 representing the fair market value of the bonds received.

On November 17, 1927, petitioner William H. Schmidt was the owner of 80 shares of the common stock of the Gas Co. which had cost him $500. He received for the 80 shares of common stock of the Gas Co. $6,336.65 in cash and bonds of the Gas Corporation of the par value of $4,500 and of the fair market value of $4,140. The transfer of the stock for cash and bonds was effected under the terms of a deposit agreement dated June 24, 1927. This petitioner reported in his 1927 return a profit of $6,336.65, being the amount of the cash received. He did not in 1927 sell or otherwise dispose of any of the bonds of the Gas Corporation received for his stock. The respondent adjusted this petitioner's income for 1927 by increasing the same in the amount of $4,140 representing the fair market value of the bonds received.

On November 17, 1927, petitioner Frank M. McNab was the owner of 176 shares of the common stock of the Gas Co. which had cost him $2,100. He received for his 176 shares of the common stock of the Gas Co. $13,384.74 in cash and bonds of the Gas Corporation of the par value of $10,500 and of the fair market value of $9,660. The transfer was effected under the terms of a deposit agreement dated June 24, 1927. This petitioner reported in his 1927 return a profit of $11,221, by deducting $2,163.74 against the cash received. He did not in 1927 sell or otherwise dispose of any of the bonds of the Gas Corporation received for his stock. The respondent adjusted this petitioner's income for 1927 by increasing the same in the amount of $9,723.74, by including $9,660 as representing the fair market value of the bonds and by reducing the cost $63.74.

Petitioner Carrie S. Protheroe is the transferee of Thomas J. Protheroe, deceased, whose estate owned 192 shares of the common stock of the Gas Co. which had a basis of $4,413. The estate received for this stock $14,900 in cash, less $340.57 deducted as its share of the expense of the transaction, and bonds of the Gas Corporation having a par value of $11,500 and a fair market value of $10,580. The transfer was effected under the terms of a deposit agreement dated June 24, 1927. This petitioner's transferor did not in 1927 sell or otherwise dispose of the bonds of the Gas Corporation received for his stock.

It is the contention of the petitioners in these proceedings that the exchange by the stockholders of the Gas Co. of a majority of the voting capital stock of that company for cash and bonds of the Gas Corporation, a Delaware corporation, organized for that purpose, was a merger or consolidation, or something in the nature thereof, and, as such, constituted a reorganization within the meaning of section 203(h)(1) of the Revenue Act of 1926, and that as a result of such reorganization the value of the bonds received in connection with the transaction was not subject to tax in accordance with section 203(d)(1) of the same taxing act.

The pertinent provisions of the statute are as follows:

SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(h) (1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation). &ast; &ast; &ast;

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

As stated by the Supreme Court in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, with reference to the term "reorganization" as contained in section 203 (h) (1) (A), above quoted:

The words within the parenthesis may not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness can not be designated as either merger or consolidation. &ast; &ast; &ast;

No contention is made by the petitioners that the transaction by which the Gas Corporation acquired in excess of 60 percent of the voting capital stock of the Gas Co. was a strict merger or consolidation. But it is contended that within the expanded meaning of the phrase "merger or consolidation" as contained within the parenthetical clause of section 203 (h) (1) (A) of the Revenue Act of 1926 there was a merger or consolidation of these companies. It is pointed out that the Gas Corporation acquired a majority of the voting stock (both common and preferred stock being voting stock) of another corporation, namely, the Gas Co.

As observed by the Supreme Court in *Gregory* v. *Helvering*, 293 U. S. 465, the term "reorganization" contained in section 112 (i) of the Revenue Act of 1928 refers to the reorganization "of corporate business." A transaction of the nature of that contained in these proceedings can not be said to partake of the nature of a merger or consolidation unless there is a continuity of interest on the part of the old corporation or of its stockholders in the new corporation. *Cortland Specialty Co.* v. *Commissioner* (C. C. A., 2d Cir.), 60 Fed. (2d) 937; *Gregory* v. *Helvering, supra; Mead Coal Co.* v. *Commissioner* (C. C. A., 4th Cir.), 72 Fed. (2d) 22. Where the continuity of interest is claimed to rest in the stockholders of the old company, in order that the claim may be valid it must appear that the proprietary interest of the old stockholders survives in the new corporation. Where the interest of the stockholders of the old corporation in the new is represented by short term notes there is no reorganization of the corporation within the contemplation of the statute. *Pinellas Ice & Cold Storage Co.* v. *Commissioner, supra.* Where the interest of the old stockholders is represented only by bonds of the new corporation, the requirement for a continuity of interest is not fulfilled. As was stated by the Circuit Court of Appeals for the Second Circuit in *Worcester Salt Co.* v. *Commissioner*, 75 Fed. (2d) 251, "bonds are merely an evidence of indebtedness", and the receipt of bonds by an old corporation gave the old corporation no interest in the new corporation. Where there is no continuity of proprietorship interest, the reorganization provisions of the Revenue Act of 1928, which defer tax upon income actually received are not applicable.

In the proceedings at bar the petitioners received nothing but cash and bonds of the Gas Corporation in exchange for their shares of stock of the Gas Co. They had no continuing interest in the new corporation. They are therefore liable to income tax upon the profits realized from the exchange which are determined by deducting from the cash plus the fair market value of the bonds received the cost to the petitioners of their shares of stock in the Gas Co. Cf. *Hay*

*Foundry & Iron Works*, 33 B. T. A. 144. The stipulated facts show the basis for the computation of such profits.

The appeal of *J. S. Rippel & Co.*, 30 B. T. A. 1146, involved another stockholder of the Southern California Gas Co., who received in exchange for his shares of stock cash and bonds of the Southern California Gas Corporation. We held that there was no reorganization of the Southern California Gas Co. because it had not been dissolved, and in support of our opinion cited *John J. Watts*, 28 B. T. A. 1056. The petitioners point out that the decision of the Board in the case of *John J. Watts, supra*, was reversed by the Circuit Court of Appeals for the Second Circuit, 75 Fed. (2d) 981. Hence, they argue that the fact that the Gas Co. was not dissolved is immaterial. Granted that this was so, we are nevertheless of the opinion, for reasons set forth above, that the contentions of the petitioners herein are not meritorious.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL dissents.

TRAMMELL, dissenting: I now think that the *Rippel* case was in error and should not be followed.