PINELLAS ICE & COLD STORAGE CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 182. Argued December 12, 13, 1932.—Decided January 9, 1933.

*Mr. Albert L. Hopkins*, with whom *Messrs. Harry B. Sutter* and *Jay C. Halls* were on the brief, for petitioner.

*Mr. Whitney North Seymour*, with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Sewall Key, J. Louis Monarch*, and *Erwin N. Griswold* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Petitioner, a Florida corporation, made and sold ice at St. Petersburg. Substantially the same stockholders owned the Citizens Ice and Cold Storage Company, engaged in like business at the same place. In February, 1926, Lewis, general manager of both companies, began negotiations for the sale of their properties to the National Public Service Corporation. Their directors and stockholders were anxious to sell, distribute the assets and dissolve the corporations. The prospective vendee desired to acquire the properties of both companies, but not of one without the other.

In October, 1926, agreement was reached and the vendor's directors again approved the plan for distribution and dissolution. In November, 1926, petitioner and the National Corporation entered into a formal written contract conditioned upon a like one by the Citizens Company. This referred to petitioner as " vendor " and the National Corporation as " purchaser." The former agreed to sell,

the latter to purchase the physical property, plants, etc., " together with the goodwill of the business, free and clear of all defects, liens, encumbrances, taxes and assessments for the sum of $1,400,000, payable as hereinafter provided." The specified date and place for consummation were eleven A. M., December 15, 1926, and 165 Broadway, New York City, when " the vendor shall deliver to the purchaser instruments of conveyance and transfer by general warranty in form satisfactory to the purchaser of the property set forth. . . . The purchaser shall pay to the vendor the sum of $400,000.00 in cash." The balance of the purchase price ($1,000,000.00) shall be paid $500,-000.00 on or before January 31, 1927; $250,000.00 on or before March 1, 1927; $250,000.00 on or before April 1st, 1927. Also, the deferred installments of the purchase price shall be evidenced by the purchaser's 6% notes, secured either by notes or bonds of the Florida West Coast Ice Company, thereafter to be organized to take title, or other satisfactory collateral; or by 6% notes of such Florida company secured by first lien on the property conveyed, or other satisfactory collateral.

The vendor agreed to procure undertakings by E. T. Lewis and Leon D. Lewis not to engage in manufacturing or selling ice in Pinellas County, Florida, for ten years.

The $400,000 cash payment was necessary for discharge of debts, liens, encumbrances, etc. The Florida Company, incorporated December 6, 1926, took title to the property and executed the purchase notes secured as agreed. These were paid at or before maturity except the one for $100,-000, held until November, 1927, because of flaw in a title. As the notes were paid petitioner immediately distributed the proceeds to its stockholders according to the plan.

The property conveyed to the Florida Company included all of petitioner's assets except a few vacant lots worth not more than $10,000, some accounts—$3,000 face value—also a small amount of cash. Assets, not exceed-

ing 1% of the whole, were transferred to the Citizens Holding Corporation as trustee for petitioner's stock-holders—99% of all vendor's property went to the Florida Company. The plan of the whole arrangement as carried out was accepted by petitioner's officers and stockholders prior to November 4, 1926.

The Commissioner of Internal Revenue determined that the petitioner derived taxable gain exceeding $500,000 and assessed it accordingly under the Act of 1926. The Board of Tax Appeals and the Circuit Court of Appeals approved this action.

The facts are not in controversy. The gain is admitted; but it is said this was definitely exempted from taxation by § 203, Revenue Act of 1926.

The Act, approved February 26, 1926, c. 27, 44 Stat. 9, 11, 12,—

" Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

"(b) . . . . .

"(c) The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

"(d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 203.

"(e) . . . . .

" Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

"(b) (1) and (2) . . . . .

"(3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(4) and (5) . . . . .

"(c) and (d) . . . . .

"(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

"(h) As used in this section and sections 201 and 204—

"(1) The term ' reorganization ' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to an-

other corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

All of § 203 (b) is in the margin.*

Counsel for the petitioner maintain—

The record discloses a " reorganization " to which petitioner was party and a preliminary plan strictly pursued.

---

*Sec. 203 (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

(b) (1) No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment, or if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock

The Florida West Coast Ice Company acquired substantially all of petitioner's property in exchange for cash and securities which were promptly distributed to the latter's stockholders. Consequently, under § 203, the admitted gain was not taxable.

The Board of Tax Appeals held that the transaction in question amounted to a sale of petitioner's property for money and not an exchange for securities within the true meaning of the statute. It, accordingly and as we think properly, upheld the Commissioner's action.

The "vendor" agreed "to sell" and "the purchaser" agreed "to purchase" certain described property for a definite sum of money. Part of this sum was paid in cash; for the balance the purchaser executed three promissory notes, secured by the deposit of mortgage bonds, payable, with interest, in about forty-five, seventy-five, and one hundred and five days, respectively. These notes—mere evidence of obligation to pay the purchase price—were not securities within the intendment of the

---

or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

(5) If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

act and were properly regarded as the equivalent of cash. It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well-secured, short-term notes, (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed. We can discover no good basis in reason for the contrary view and its acceptance would make evasion of taxation very easy. In substance the petitioner sold for the equivalent of cash; the gain must be recognized.

The court below held that the facts disclosed failed to show a "reorganization" within the statutory definition. And, in the circumstances, we approve that conclusion. But the construction which the court seems to have placed upon clause A, paragraph (h) (1), § 203, we think is too narrow. It conflicts with established practice of the tax officers and if passed without comment may produce perplexity.

The court said—"It must be assumed that in adopting paragraph (h) Congress intended to use the words 'merger' and 'consolidation' in their ordinary and accepted meanings. Giving the matter in parenthesis the most liberal construction, it is only when there is an acquisition of substantially all the property of another corporation in connection with a merger or consolidation that a reorganization takes place. Clause (B) of the paragraph removes any doubt as to the intention of Congress on this point."

The paragraph in question directs—"The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)." The words within the parenthesis may

not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. But the mere purchase for money of the assets of one Company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes. This general view is adopted and well sustained in *Cortland Specialty Co.* v. *Commissioner of Internal Revenue,* 60 F. (2d) 937, 939, 940. It harmonizes with the underlying purpose of the provisions in respect of exemptions and gives some effect to all the words employed.

The judgment of the court below is

*Affirmed.*