DANIEL H. BURNHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HUBERT BURNHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67330, 68008. Promulgated October 3, 1935.

*Arthur R. Foss, Esq.,* for the petitioners.
*George D. Brabson, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies in income tax for the year 1929 as follows:

| Name | Docket No. | Amount |
|------|-----------|--------|
| Daniel H. Burnham | 67330 | $7,294.20 |
| Hubert Burnham | 68008 | 11,432.27 |

The Commissioner conceded at the hearing that each petitioner had erroneously reported certain interest and profits on his return. The only issue for decision in each case is whether the petitioner is entitled to deduct a loss from the exchange of notes of the Courts Building Corporation for stock of that corporation in pursuance of the plan of reorganization of that corporation. The cases have been consolidated and the facts have been stipulated.

The petitioners owned practically all of the stock of the Courts Building Corporation. They and their wives owned unsecured promissory notes of the corporation as shown in the following table:

| Name of payee and owner | Date of note | Face amount |
|-------------------------|--------------|-------------|
| Daniel H. Burnham | Aug. 15, 1927 | $402,500 |
| Do | Aug. 15, 1928 | 5,000 |
| Helen D. Burnham (wife of Daniel) | Aug. 25, 1927 | 51,500 |
| Hubert Burnham | Aug. 15, 1927 | 434,000 |
| Do | Aug. 15, 1928 | 5,000 |
| Vivian C. Burnham (wife of Hubert) | Aug. 15, 1927 | 20,000 |
| Total | | 918,000 |

Two hundred and fifty thousand dollars had been paid on the notes. The notes were due " on or before ten years after date." They contained powers of attorney to confess judgment. The notes were given originally in consideration of loans made to the corporation by the owners and prior owners of the notes. Other outstanding obligations of the corporation were a first mortgage 15-year note for $4,500,000, general mortgage bonds amounting to $425,000, and junior mortgage bonds amounting to $599,000. Refinancing became necessary in 1929 and the corporation was then recapitalized. The recapitalization was a reorganization within the definition of that term contained in section 112(i)(1) of the Revenue Act of 1928, as the parties agree. The holders of the promissory notes exchanged the notes and their rights to accrued interest for new stock of the corporation in pursuance of the plan of reorganization. The petitioners also exchanged their old stock for new in pursuance of the same plan. The bases of the notes has been stipulated, as has the fair market value of the stock received in exchange for them. The latter was less than the former. The petitioners and their wives were not in control of the corporation immediately after the exchange within the meaning of control as defined in section 112(j).

The petitioners contend that their losses upon the exchange ·of the notes are recognized under the general rule of section 112(a). The respondent's contention is that the exchange falls under either (3) or (5) of 112(b) and, therefore, no loss (or gain) can be recognized. Clearly (5) does not apply, since part of the stock necessary to give the petitioners and their wives control was not theirs at any time immediately after the exchange, but at that time belonged to others under the agreements which constituted the plan of reorganization. Cf. *Wilbur F. Burns*, 30 B. T. A. 163, and cases there cited. Section 112(b)(3) is as follows:

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

The question for decision narrows to this, Were these particular promissory notes which these petitioners exchanged for new stock of the corporation securities within the meaning of that term as used in the above quoted provision of the act? The word " securities " is not defined either in the act or in the regulations. The petitioners concede that the word, as generally used, might be broad enough to include such notes, since, when so used, it means something given to make certain the fulfillment of an obligation, the evidence of a debt or of property. But they argue that, as used in section 112(b)(3) it was not intended to include promissory notes,

such as they exchanged, but was intended to include only more formal evidence of property, such as, long-term series notes designed for distribution among investors, bonds, stock, and the like. They cite *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, and *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937, to show that not all promissory notes are securities within the intendment of section 203 (b) (3) and (e) of the Revenue Act of 1926.

Although section 203 of the Revenue Act of 1926 was the immediate predecessor of section 112 of the Revenue Act of 1928, nevertheless section 112 (b) (3), with which we are now concerned, is quite different from subsection (b) (3) of section 203, with which the courts were concerned in the above cited cases. Furthermore, the facts and issues in the cited cases were materially different from the facts and issues in the present proceedings. In each of those cases the court was considering the notes only as they indicated whether there had been a reorganization or whether there had been a sale. Here there was clearly a reorganization, and the only question is whether these promissory notes were securities. For these reasons different considerations are determinative in the present case.

The Supreme Court held in the *Pinellas* case that a sale rather than a reorganization occurred and in the course of its opinion said, in regard to secured promissory notes payable in 45, 75, and 105 days, given as evidence of an obligation to pay a part of the purchase price of assets, that they " were not securities within the intendment of the Act and were properly regarded as the equivalent of cash." The next sentence in the opinion is as follows:

It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well secured, short-term notes (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed.

The same kind of an issue was decided the same way in the *Cortland Specialty* case. The court there said:

As no stock was issued against the transfer, the conditions for an exemption were not fulfilled unless the notes, all payable within fourteen months of the date of the transfer, and all unsecured, can be considered " securities " under section 203 (e). Inasmuch as a transfer made entirely for cash would not be enough, it can not be supposed that anything so near to cash as these notes payable in so short a time and doubtless readily marketable would meet the legislative requirements.

\* \* \* The word " securities " was used [in 203 (e)] so as not to defeat the exemption in cases where the interest of the transferor was carried over to the new corporation in some form.

It is apparent from reading the two cases cited that the courts were there determining the legislative intent of provisions different

from the one involved herein. They did not mean to say that in a provision such as that of section 112(b)(3) the word "securities" was not intended to include promissory notes of the kind exchanged by these petitioners. Section 112(b)(3) must apply just the same whether gain or loss is involved. Here the reasoning of the courts, as above disclosed, can be used to show that section 112(b)(3) applies, for there can be no justice or propriety in taxing (or recognizing the loss of) one who transfers stock and notes of the corporation in exchange for its new stock and in relieving (or failing to recognize the loss of) another who transfers bonds of the corporation (instead of notes) for the new stock.

The court further said in the *Cortland Specialty* case:

Section 203 of the Revenue Act of 1926 must be interpreted in its setting. Its purpose was to relieve those interested in corporations from profits taxes in cases where there was only a change in the corporate form in which business was conducted without an actual realization of any gain from an exchange of properties.

That statement is apposite here. See also Ways & Means Committee Report, H. R. 179, 68th Cong., 1st sess., pp. 13, 14. These petitioners realized no gain and suffered no loss. There was only a change in the corporate form and in the kind of property which they held. There was a reorganization. The notes went back to the maker and were canceled. The note holders merely changed their interest in the corporation to that of stockholders. This was the kind of an exchange which Congress intended to relieve by eliminating the income tax consequences. It likewise intended that no loss should be recognized from such a transfer. These notes were securities within the meaning of section 112(b)(3). Consequently, the petitioners are not entitled to deduct their losses.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN dissents.