**WESTERN INDUSTRIES CO. v. HELVERING, Commissioner of Internal Revenue.**

No. 6360.

United States Court of Appeals for the District of Columbia.

Argued Dec. 3, 1935.

Decided Jan. 20, 1936.

W. W. Spalding, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, Bruce A. Low, and J. Louis Monarch, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

The question raised by this petition for review is whether the transfer in 1926 of assets by petitioner corporation to another corporation, in consideration of cash, notes, preferred and common stock, is a nontaxable transaction under the provisions of section 203 of the Revenue Act of 1926.

Petitioner was organized under the laws of California in 1917 for the manufacture of alcohol and by-products. In April, 1926, it transferred its plant, equipment, inventory of materials and supplies, patent and patent rights, and good will, to American Solvents & Chemical Corporation (hereinafter Chemical Corporation) for $580,000 in cash, $78,537.26 in notes, 15,000 shares of preferred, and 22,000 shares of common stock of that corporation. Of the total cash received, $522,500 was distributed immediately to the stockholders of petitioner, and the retained balance of cash and notes was returned by petitioner for taxation as cash and notes not distributed to stockholders. The Commissioner determined a deficiency on the ground that the transaction was a sale and therefore not within the provisions of section 203 (h) (1) (A) of the Revenue Act of 1926, 44 Stat. 14. He fixed the fair market value of the preferred stock at $30 per share, and thus increased the taxable gain from $136,037.26 to $643,701.51. The Board of Tax Appeals held with the Commissioner.

The facts stipulated and found by the Board are as follows: Chemical Corporation was organized April 9, 1926, for the purpose of consolidating a number of alcohol and by-products plants and businesses for cash and its stock. Negotiations between its organizers and petitioner extended over a period of six months, resulting in April, 1926, in the transfer by petitioner of its plant and inventory, etc., to Chemical Corporation for cash and the stock of that corporation. Petitioner retained its cash balance and discharged its liabilities. In addition to the property of petitioner, Chemical Corporation acquired all of the assets and assumed the liabilities of the Jefferson Distilling Company, Crescent Industrial Alcohol Company, and Everett Distilling Company for cash and its preferred stock. Petitioner alone received a part of the issued common stock, which it agreed not to sell for a period of three years.

The pertinent portion of the statute (Revenue Act of 1926) is section 203 (a); (b) (3); (e); (e) (1); (e) (2); (h) (1) (A), 44 Stat. 12, 14, copied in the margin.[1]

First. Was the transaction a sale? The Commissioner maintains it was because, he says, there was neither merger nor consolidation, and therefore not a "reorganization" as contemplated by section 203. In the view of the Commissioner, to bring the transaction within the statute there must have been an agreement between the two corporations to combine their enterprises; the continued participation of the stockholders of the combining corporations; the assumption by the surviving corporation of the liabilities of the old company; and the dissolution of the transferor corporation. The argument is all based on the theory that Congress meant to confine the words "merger" and "consolidation" within their ordinary meaning. But, as the Supreme Court pointed out in Pinellas Ice Company v. Commissioner,

[1] "Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section. * * *

"(b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed. * * *

"(h) As used in this section and sections 201 and 204—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)."

287 U.S. 462, 470, 53 S.Ct. 257, 77 L.Ed. 428, the insertion by Congress in section 203 (h) of the language in parenthesis found in that section removes all doubt that Congress intended something more than the ordinary merger or consolidation. The words used, the court said, expand the meaning of "merger or consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meanings of those words. And in Helvering, Commissioner, v. Minnesota Tea Co., 56 S.Ct. 269, 80 L.Ed. ——, Helvering, Commissioner, v. Watts, 56 S.Ct. 275, 80 L.Ed. ——, and John A. Nelson Company v. Helvering, Commissioner, 56 S.Ct. 273, 80 L.Ed. ——, all decided December 16, 1935, the Supreme Court expanded and amplified its language in Pinellas Ice Company v. Commissioner, to cover all the grounds now urged by the Commissioner here. In the first case, the Tea Company had organized an investment company to which it transferred all its real estate in consideration of the issuance to it of all the investment company's capital stock. This stock it immediately distributed among its stockholders. It then transferred its remaining assets to Grand Union Company in exchange for voting trust certificates representing 1,800 shares of the Grand Union Company's capital stock and $426,842.-52 in cash. It retained the certificates, but immediately distributed the money among its stockholders, who agreed to pay in excess of $100,000 of its outstanding debts. The Board of Tax Appeals held the transaction a sale. The Supreme Court said it was not a sale, but partook of the nature of a reorganization in that the seller acquired a definite and substantial interest in the purchaser. "True it is that the relationship of the taxpayer to the assets conveyed was substantially changed, but this is not inhibited by the statute. Also, a large part of the consideration was cash. This, we think, is permissible so long as the taxpayer received an interest in the affairs of the transferee which represented a material part of the value of the transferred assets. Finally, it is said the transferror was not dissolved, and therefore the transaction does not adequately resemble consolidation. But dissolution is not prescribed, and we are unable to see that such action is essential to the end in view."

The same position was maintained and the same reasoning was adopted in the Watts Case. And in the Nelson Case the facts were that the taxpayer transferred to a new corporation substantially all its property except $100,000 in return for $2,000,000 cash and the entire issue of preferred stock of the new corporation. Part of the cash was used to retire the taxpayer's own preferred shares, and the remainder and the preferred stock of the transferee corporation went to the transferror's stockholders. It retained its franchise and $100,000, and continued to be liable for certain obligations. The preferred stock, except in case of default, had no voice in the control of the new corporation. The lower court (C.C.A.) 75 F.(2d) 696, 698, held the transaction constituted a sale, saying:

"The controlling facts leading to this conclusion are that petitioner continued its corporate existence and its franchise and retained a portion of its assets; that it acquired no controlling interest in the corporation to which it delivered the greater portion of its assets; that there was no continuity of interest from the old corporation to the new; that the control of the property conveyed passed to a stranger, in the management of which petitioner retained no voice."

To this the Supreme Court answered:

"True, the mere acquisition of the assets of one corporation by another does not amount to reorganization within the statutory definition. Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, so affirmed. But where, as here, the seller acquires a definite and substantial interest in the affairs of the purchasing corporation, a wholly different situation arises. The owner of preferred stock is not without substantial interest in the affairs of the issuing corporation, although denied voting rights. The statute does not require participation in the management of the purchaser; nor does it demand that the conveying corporation be dissolved. A controlling interest in the transferee corporation is not made a requisite by section 203 (h) (1) (A) (26 U.S.C.A. § 112 note). This must not be confused with paragraph (h) (2) (26 U.S.C.A. § 112 note).

"Finally, as has been pointed out in the Minnesota Tea Case, paragraph (h) (1) (B) was not intended to modify the

provisions of paragraph (h) (1) (A). It describes a class. Whether some overlapping is possible is not presently important."

We regard these decisions as determinative of the instant case. Here the facts found show that petitioner transferred to the new corporation "substantially all" its property. Section 203 (h) (1) (A). It is true petitioner retained, of its assets, $199,719.34 in money and also notes and accounts receivable of a book value of $79,774.74; but the only property which it retained, as distinguished from money, was a ranch which the evidence shows it had purchased for a retired employee who had contracted tuberculosis in its employ and which had no relation to any business conducted by it, and which it subsequently sold for $5,000. And of the money retained, $107,650.43 was applicable to the payment of liabilities existing as of the date of the transfer and which it subsequently paid. It received from the Chemical Corporation cash, notes, and stocks of the value of $1,123,537.26 for the property which it transferred to that corporation, and it retained money assets after the payment of liabilities of less than $200,000.

In these respects its situation was substantially identical with that obtaining in the Nelson Case. There the transferror corporation retained $100,000 of money. Here the transferror corporation retained something less than $200,000, but the difference is not material when compared with the total value of the assets transferred. There the transferror corporation received preferred stock only. Here the transferror received both preferred and common stock. In each case the transferror corporation passed to the new corporation substantially all its assets and received and retained a substantial interest in the transferee corporation, all as a result of an agreement forming a plan of consolidation as that word is construed by the Supreme Court; and here, in addition, the taxpayer went out of business as an operating corporation and continued thereafter, as the Board found, as a holding corporation.

In these circumstances it is impossible to distinguish the instant case from those we have cited, and it follows from this, that the order of the Board of Tax Appeals was erroneous and should be reversed.

Order reversed.