LEWIS W. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100712. Promulgated February 19, 1941.

*E. M. Woolf, Esq.*, for the respondent.

OPINION.

BLACK: The Commissioner has determined a deficiency of $1,391.91 in petitioner's income tax liability for the year 1936.

The deficiency results from the disallowance by the Commissioner of $15,348.96 of the loss claimed by petitioner on his income tax return for the taxable year. The Commissioner explained his adjustment of petitioner's claimed loss in the following language in his deficiency notice:

As the result of a sale of the net assets of F. M. Hoyt Shoe Company 1931 to F. M. Hoyt Shoe Corporation, you elected to take 1,031 shares 2d preferred stock of the purchasing corporation in lieu of $1.00 a share for the stock of the old company held by you. The exchange constituted a transaction giving rise to taxable gain or deductible loss at that time and the basis for the shares acquired in the exchange was $1.00 per share. Any loss to you, as the result of worthlessness of the 2d preferred stock, is limited to $1,031.00.

The petitioner by an appropriate assignment of error contests this action of the Commissioner. We adopt the stipulation of facts which has been filed as our findings of fact.

The following facts are stated herein for the purpose of a discussion of the only issue which is submitted to us for decision:

The petitioner is an individual with a residence at Auburndale, Massachusetts, and for the taxable year 1936 filed his income tax return with the collector of internal revenue at Boston, Massachusetts.

Among other deductions which the petitioner claimed in the return filed was one in the amount of $16,379.96 which the petitioner contended was a loss sustained by reason of 1,031 shares of second preferred stock of the F. M. Hoyt Shoe Corporation becoming worthless in 1936.

The F. M. Hoyt Shoe Co. (hereinafter called the old company) was a corporation organized in 1891, located in Manchester, New Hampshire, and engaged in the business of manufacturing shoes. It had both common and preferred stock outstanding. Sometime prior to 1931 the petitioner purchased 1,031 preferred shares of said company at a cost of $16,379.96. As a result of financial difficulties the company was placed in receivership in 1931 and the petitioner and one Charles H. Tobey were appointed trustees. During the same year John D. Murphy and other parties who had no financial interest in the F. M. Hoyt Shoe Co. offered to buy the assets of said company in order that the industry could be kept in New Hampshire.

In May 1931 a new corporation was formed under the name of F. M. Hoyt Shoe Corporation (hereinafter referred to as the new corporation). John D. Murphy and the other parties associated with him in the organization of the new corporation paid into the new corporation $200,000 in cash, for which there was issued to them 2,000 shares of first preferred stock and 12,000 shares of common stock of the new corporation. The capital of the new corporation consisted of the 2,000 shares of first preferred stock (par value $100 per share) with voting privileges, and the 12,000 shares of common stock (no par value but recorded on the books at $10 per share) with voting privileges, and 10,086 shares of second preferred stock (with no par value but recorded on the books at $10 per share) with no voting privileges. Part, but not all, of the 10,086 shares of second preferred stock remained unissued, as hereinafter explained. The consideration for the sale of the assets of the old company to the new corporation was that the latter was to assume all liabilities of the old company in exchange for its assets and was to give to the preferred stockholders of the old company one share of second preferred stock of the new corporation for each one share of preferred stock owned in the old company, or in lieu thereof $1 a share for each share of preferred stock held in the old company.

At a special meeting of the old company held May 27, 1931, it was voted to accept the offer of the new corporation and the following letter was sent to each preferred stockholder of the old company:

To the Preferred Stockholders
of F. M. Hoyt Shoe Company:

At a special meeting of the stockholders of F. M. Hoyt Shoe Company, held May 27, 1931, of which you were notified, it was voted to sell the assets of the Company to F. M. Hoyt Shoe Corporation, a corporation newly organized under the laws of New Hampshire. The consideration of the sale was the assumption of all the liabilities of your company by the new company and the payment of 10,086 shares of Second Preferred Stock to the undersigned as trustees to distribute to the Preferred Stockholders of the Old Company. This provides one share of the Second Preferred Stock of F. M. Hoyt Shoe Corporation for each outstanding share of Preferred Stock of F. M. Hoyt Shoe Company. An alternative offer of a cash payment of $1.00 per share on the Preferred Stock was made.

This sale has now been completed and you are entitled to receive one share of the Second Preferred Stock of F. M. Hoyt Shoe Corporation for each share of Preferred Stock of F. M. Hoyt Shoe Company, or if you prefer a check will be sent to you for $1.00 per share on your stock. The common stock has no value.

The alternative offer of cash expires June 27, 1931. Please indicate your choice on the enclosed form and indorse and send in your stock, upon receipt of which a check or stock will be sent you.

Yours very truly,

CHARLES W. TOBEY,
LEWIS W. HALL,
*Trustees.*

Some of the preferred stockholders of the old company elected to take cash for their shares and others elected to take second preferred stock of the new corporation. The petitioner elected to take second preferred stock of the new corporation rather than $1 a share which he had the right to take in lieu thereof under the option.

The new corporation ceased business operations in 1936 and the stockholders voted to liquidate it and liquidation proceedings began at once.

It is not disputed that petitioner suffered a loss in 1936 or that this loss was caused by the 1,031 shares of second preferred stock of the F. M. Hoyt Shoe Corporation owned by him becoming worthless in that year. That the stock did become worthless in 1936 is admitted by respondent in his answer and agreed in the stipulation of facts.

The only question is what the measure of the amount of petitioner's loss is; was it the amount which he paid for his preferred shares in the old company, or was it the $1,031, which respondent has determined in his deficiency notice?

Section 113 of the Revenue Act of 1936 specifies the basis as follows:

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

  *   *   *   *   *   *   *

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, the basis (except as provided in paragraph (15) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. * * *

In article 113 (a) (6)–1 of Regulations 94 it is provided that:

In the case of an exchange, after February 28, 1913, of property solely of the type described in section 112 (b), if no part of the gain or loss was recognized under the law applicable to the year in which the exchange was made, the basis of the property acquired is the same as the basis of the property transferred by the taxpayer with proper adjustments to the date of the exchange.

Pursuant, therefore, to the law and regulations applicable in the taxable year it is clear that the proper basis for determining the loss sustained by petitioner in 1936 must be determined under the Revenue Act of 1928, the law applicable in 1931 when the exchange was made. That act provides:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

  *   *   *   *   *   *   *

(b) EXCHANGES SOLELY IN KIND.—

  *   *   *   *   *   *   *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

  *   *   *   *   *   *   *

(i) DEFINITION OF REORGANIZATION.—* * *
(1) The term "reorganization" means (A) a merger or consolidation (including the asquisition by one corporation of * * * substantially all the properties of another corporation) * * *.

There can be no question of course but that the facts in the instant case show that the new corporation acquired all the assets of the old company and thus in that respect, at least, the transaction would fall within the provisions of section 112 (i) (1) (A), above quoted, but it is not every acquisition by one corporation of all the assets

of another corporation that results in a reorganization. Where the transaction amounts to a mere sale by one corporation of its assets to another, there is no reorganization. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462.

In order for a transfer by one corporation of all its assets to another corporation to result in a reorganization under the provisions of the statute above quoted, the transferring corporation or its stockholders must retain a continuing interest in the transferred assets, evidenced by stock ownership, either common or preferred, in the acquiring corporation. This ownership of stock by the transferring corporation or its stockholders need not amount to enough to give control over the acquiring corporation but it must be large enough to be substantial. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Nelson* v. *Helvering*, 296 U. S. 374.

In *Helvering* v. *Minnesota Tea Co.*, *supra*, which involved the acquisition of substantially all the assets of one corporation by another for cash and stock, stockholders of the old corporation held after the exchange only 7½ percent of the shares in the successor corporation. In that situation the Supreme Court said:

> * * * And we now add that this interest must be definite and material; it must represent a substantial part of the value of the thing transferred. This much is necessary in order that the result accomplished may genuinely partake of the nature of merger or consolidation.

In the instant case it is clear that the transfer by the old company of all of its assets to the new corporation was in the main a sale. The letter by the trustees of the old company to the preferred stockholders informing them of what was being done speaks of the transaction as a sale by the old corporation to the new. The principal consideration for the transfer was the assumption by the new corporation of all the liabilities of the old company. What the value of the assets transferred was and what the amount in dollars and cents of the debts of the old company assumed by the new corporation was, the stipulation likewise does not show. These are facts of more or less importance about which the stipulation does not inform us. In order to get capital with which to pay the debts of the old company and presumably to have liquid capital with which to operate, the new corporation issued 2,000 shares of first preferred stock of a par value of $100 per share and 12,000 shares of common stock of no par value to John D. Murphy and his associates for $200,000 in cash. These parties had no association with the old corporation. This was entirely new capital. But there was a continuing interest preserved by the preferred stockholders of the old company in the new.

Each of the holders of the 10,086 preferred stock of the old company had the privilege of exchanging his shares for an equal number of shares of second preferred stock of no par value in the new corporation. If the preferred stockholders did not care to make the exchange, they were offered $1 in cash for each share of their preferred stock in the old company. The facts, as stipulated, show that some elected to surrender their preferred shares for the $1 in cash and some elected to exchange them for the second preferred shares of the new corporation. How many shares were exchanged for cash and how many were exchanged for the second preferred stock, the record does not show.

Of course it requires no citation of authorities to support the proposition that those who elected to take cash did not retain any continuing interest in the new corporation. As to them the disposal of their stock was a completed and closed transaction. On the other hand it requires no citation of authorities, other than those we have cited, to establish the proposition that those preferred stockholders of the old company who elected to exchange their shares for the second preferred stock of the new corporation did retain a continuing interest in the assets of the old company which were transferred to the new. How substantive was such continuing interest? We know only in part. The stipulation says:

Some of the preferred stockholders of the old company elected to take cash for their shares, others elected to take second preferred stock of the new corporation. * * *

None of these are shown, except that petitioner transferred his 1,031 shares of preferred stock in the old company for 1,031 shares of second preferred stock in the new corporation. Did that give the transferring corporation or its stockholders a substantial continuing interest in the assets of the old corporation, which were transferred to the new within the meaning of the decision of the Supreme Court in *Helvering* v. *Minnesota Tea Co.*, *supra?* We think not.

One of the definitions of the word "substantial" in Webster's New International Dictionary, Unabridged, 2d ed., is: "Considerable in amount, value, or the like, large, as a substantial gain."

It is plain from the stipulated facts that the second preferred stock of the new corporation had but little value. It was of no par value. However, it was set up on the books at $10 per share. But the owners of the preferred stock of the old company were offered only the election to take $1 per share for their old shares if they chose not to make the exchange for the second preferred of the new corporation. Some of them took the $1 per share, indicating that they regarded that as a better exchange than to take the second preferred stock. Therefore, we have nothing before us to indicate that these

second preferred shares had a greater value than $1 per share. Hence, in any comparison that we make we must treat the 1,031 shares of second preferred stock which petitioner received in the new corporation as having a value of $1,031 at the time they were received. There is nothing to indicate that they had any greater value. As we have already pointed out, the new capital which was paid into the new corporation by its new stockholders was $200,000. Also we have already pointed out, the stipulation of facts does not give us any information as to the value of the assets which the old company transferred to the new corporation, but if we assume that the value of these assets was something like the $200,000 cash which the stockholders of the new corporation paid in, then by comparison the value of the stock which petitioner retained in the new corporation was less than 1 percent as compared to the value of the assets transferred.

We do not think this less than 1 percent which petitioner retained was a substantial continuing interest within the meaning of *Helvering* v. *Minnesota Tea Co.*, *supra*. Of course it is true that in estimating whether or not the continuing interest retained by the old stockholders in the assets transferred to the new corporation was substantial we should not only consider the amount of stock received by petitioner but should also consider the amount of stock received by other stockholders who made the exchange for second preferred stock. However, as we have already pointed out, we have no information whatever as to how much stock these other stockholders who elected to make the exchange received. Therefore, we can only consider what we do know.

The determination of the Commissioner that the exchange was one which gave rise to gain or loss is presumed to be correct, and the burden of proof is on petitioner to show otherwise. This burden we do not think petitioner has sustained. We, therefore, decide the only issue involved for the respondent.

*Decision will be entered for respondent.*