*220 OPINION.
Leech :
The contested right to deduct the sum of $6,969.92 depends here on whether petitioner was engaged in “carrying on any trade *221 or business” during 1933, and, if so engaged, whether this amount constituted “ordinary and necessary expenses” of that business. Revenue Act of 1932, sec. 23 (a).
Respondent argues that petitioner was not carrying on any business during 1933 and that the questioned deductions represented personal and not business expenses, and were, therefore, not deductible. Sec. 24 (a) of the same revenue act.
Business, as that term is used in this section of the revenue act, has been broadly defined as “That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.” Flint v. Stone Tracy Co., 220 U. S. 107. See also St. Louis Union Trust Co. et al., Trustees, 40 B. T. A. 165. But “It is not necessary that one occupy a full day each day in carrying on one’s activity to be considered to be regularly engaged in business. It is continuity of efforts devoted to the undertaking which constitutes a business regularly carried on,” S. Rose Lloyd, 32 B. T. A. 887. Moreover, a business can be carried on, within the statute, by the taxpayer, through agents under his ultimate direction. Kales v. Commissioner, 101 Fed. (2d) 35; Cornelia W. Roebling, 37 B. T. A. 82; Austin D. Barney et al., Executors, 36 B. T. A. 446; Fremont G. Peck, 34 B. T. A. 402.
Respondent breaks petitioner’s activities down and contends that no one of them alone constitutes the carrying on of a business. Thus it is said that, although the several corporations which petitioner owned were in business, petitioner, as a stockholder, was not in that business but was a mere passive investor. It is urged likewise that, although the trusts of which petitioner was the beneficiary were in business, petitioner had no legal right to interfere in that business during 1933, since the trusts did not end until 1934. However, whether the taxpayer may be classed as a passive investor as to her investments in these wholly owned corporations and as a passive owner[1] of a beneficial interest in these trusts, on the one hand, or was engaged in carrying on the business of protecting and handling what, together with other property, constituted her estate, is a question of fact. Certainly it can not be doubted that, as to her properties owned outright, the management of which she had assumed and directed throughout 1933, she was carrying on a business. It is likewise clear to us that the care and management of her investments in the gold mining corporation and the real estate company were not those of a passive investor but required and secured her active management and supervision. The bulk of her estate consisted of her interests in the two trusts. She has already been held to be entitled to depletion deductions on properties constituting the corpora of these trusts, before their termination, on the ground that she then possessed every important attribute of ownership in those properties. Lloyd-Smith v. Commissioner, 50 Fed. (2d) *222 1075. See also Merle-Smith v. Commissioner, 42 Fed. (2d) 837; cer-tiorari denied, 282 U. S. 897. But, whether she had a legal right to assume and manage these trusts before they expired by their terms, the controlling fact here is that, throughout 1933, she did supervise and direct the entire management of these trusts. See Stock Yards Bank of Cincinnati, 25 B. T. A. 964.
The volume of petitioner’s trading activities in respect of securities owned by her individually and through the trusts during the year 1933 satisfies us that no segregation of these activities, on the ground that they did not constitute the carrying on of business, is necessary. See L. T. Alverson, 35 B. T. A. 482; Richard D. Wyokoff, 19 B. T. A. 263; and Ignaz Schwinn, 9 B. T. A. 1304.
In short, confronted with the disturbing fact of her father’s maladministration of her affairs and those of the trusts, she was apparently convinced that only under her own supervision, with the aid of trusted employees, could her far-flung estate be properly handled and protected. To this end she set up an office in New York City (see Foss v. Commissioner, 75 Fed. (2d) 326) and centralized the management of her affairs there. She directed that management, in which she was engaged, practically daily.
The evidence is convincing that, during 1933, petitioner was engaged in carrying on the business of managing and protecting her estate. The items totaling the disputed deduction of $6,969.92 were not personal expenses, as respondent contends, because petitioner employed a private secretary in her own home, where her personal matters were handled. The expenses of that establishment she does not seek to deduct. Thus, the amount of $6,969.92 here in issue was in its entirety an ordinary and necessary business expense and is deductible as such.
The right to deduct the item of $45,003.93 presents a different problem. This amount constitutes the expenditures made by petitioner in connection with the readjustment of her liability on the Sugar Pine bond guaranty, and was the payment of the obligation of the petitioner, no part of which she could recover. But whether the payment of this amount was an ordinary and necessary expense of carrying on the business of the taxpayer, is not necessary to answer, since she was not in the guaranty business. Burnet v. Clark, 287 U. S. 410; Menihan v. Commissioner, 79 Fed. (2d) 304; certiorari denied, 296 U. S. 651.
The transaction involving this guaranty began when $4,000,000 of the trust funds were invested in the stock of the Sugar Pine Lumber Co. The petitioner became a guarantor of that company’s bonds because she had reason to believe that the company’s use of the funds thus secured would increase the value of her beneficial interest in its stock. Undoubtedly that stock then had value. But the stock had *223 become worthless by the close of 1932. The payments in connection with the guaranty were not made until 1933. Obviously, when petitioner thus made them, it was not with the idea of protecting or adding to her stock investment in the company. These expenditures occurred for the sole purpose of reducing her liability under the guaranty. As such, they are deductible as losses on a transaction entered into for profit. Revenue Act of 1932, sec. 23 (e) (2). John P. Dillon, 9 R. T. A. 177; Henry Adamson, 17 B. T. A. 17; George H. Stanton, 36 B. T. A. 112; Humphrey v. Commissioned, 91 Fed. (2d) 155; First National Bank, of Skowhegan, Maine, 35 B. T. A. 876; Sam Cook, 25 B. T. A. 92; W. R. Hervey, 25 B. T. A. 1282; Thomas v. United States, 18 Fed. Supp. 942. Cf. Commissioner v. Hadley, 75 Fed. (2d) 485.
The last issue involves respondent’s disallowance of a deduction for an alleged loss on the sale of the $70,000 note of the Jorwil Corporation. The petitioner contends that the exchange in which she received this note was tax-free under section 112 (b) (5) of the Revenue Act of 1932;[1] that the stock and note, which she then received for her property, were two classes of securities of the corporation, within the meaning of that section; and that her basis for the computation of gain or loss on her sale of the $70,000 note was an allocable part of the cost of the property thus transferred to the corporation. Sec. 113 (a) (6) of the Revenue Act of 1932.
The position of the respondent is (1) that the transaction involving the transfer of assets of petitioner to the Jorwil Corporation for all the stock in that corporation and its note for $303,000, was not an exchange under section 112 (b) (5), supra, but was a sale and the tax consequences, therefore, follow under section 112 (a); and (2) that if the transaction was an exchange within section 112 (b) (5), supra, the note of the Jorwil Corporation thus received by the petitioner was not within the meaning of the term “securities” used in that section, but, on the other hand, was within the category of “money” or “other property.”
We assume the transaction was an exchange within the statute. See L. & E. Slim, Inc., 39 B. T. A. 143. Thus we do not have the same question here that was considered in either Pinellas Ice & Cold *224 Storage Co. v. Commissioner, 287 U. S. 462, or Cortland Specialty Co. v. Commissioner, 60 Fed. (2d) 937. See Burnham v. Commissioner, 86 Fed. (2d) 776, affirming 33 B. T. A. 147. The question for decision here is whether the note received from the Jorwil Corporation, in this exchange, was a security within the meaning of section 112 (b) (5), section 112 (c), and section 113 (a) (6).
In answering that question, we think neither the legislation itself nor its history[2] warrants' the disregard of the concept that this term includes only that which, in itself, reflects such a “continuing interest” in the property transferred to the corporation as would dignify it as within the meaning of “securities.” See Helvering v. Bashford, 302 U. S. 454; Groman v. Commissioner, 302 U. S. 82. Since the petitioner received all the issued stock of the Jorwil Corporation, she undoubtedly had a continuing interest in that corporation and in the properties which it then held. However, does the note which petitioner received and sold give her such an interest ?
Bonds of varying maturities have been held to represent such continuing interests and to be within the term “securities” as thus used. L. & E. Stirn, Inc., supra; Kaspare Cohn Co., Ltd., 35 B. T. A. 646; Karl B. Segall, 38 B. T. A. 43. The Burnham case, supra, held that a ten-year, unsecured, confess-judgment, promissory note was within that category. However, we find no authority, in reason or otherwise, which we think supports the conclusion that the unsecured note of the Jorwil Corporation, for two years, without even a confess-judgment clause therein, rises to the dignity of the term “securities” used in section 112 (b), supra. The petitioner, as the holder of that note, was in substantially the same position as that of an ordinary general creditor. It would scarcely be held that an ordinary creditor of a corporation, by reason of that status, held such a continuing interest in the corporation as to be the owner of a security, within the cited section.
We think, rather, that the note of the Jorwil Corporation which the petitioner thus received was “other property” within that section and that the basis for the computation of gain or loss on its sale by the petitioner was its fair market value when petitioner received it. Sec. 113 (a) (6). Since the record does not disclose that this fair market value was other than the face of the note, the petitioner has not established any loss on the sale thereof.
In view of our conclusion that the note is “other property” and that its basis is therefore the same as its market value on the date of the exchange, it is not essential to discuss the allocation of basis of the *225 note for which petitioner contends. The valuation of the assets, when transferred to the Jorwil Corporation, necessary in any such allocation, has been found from opinion testimony and circumstantial evidence offered by petitioner, to the admission of which respondent did not object. In only one instance we have refused to follow that testimony — the Arthur H. Fleming account receivable .in the form of a note for $56,954.63. The write-down urged by petitioner is based on the sole ground that petitioner did not desire to enforce collection in the year of transfer, or deemed collection impossible. In 1937, $22,000 in cash and property worth $20,000 were transferred to petitioner on account of his liability, by the guardian of Arthur H. Fleming. Therefore, we have valued this item at ,its face amount as of the time of its transfer to the Jorwil Corporation.

Decision will be entered wider Bule 50.

 SEC. 112. RECOGNITION OE GAIN OR LOSS.
[[Image here]]
(b) Exchanges Solely in Kind.—
[[Image here]]
(5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his Interest in the property prior to the exchange.

 Seidman’s Legislative History of Federal Income Tax Laws, pp. 341, 700; Miller, Hendricks & Everett, Reorganizations and Other Exchanges in Income Taxation, p. 90 (note) ; Cortland Specialty Co. v. Commissioner, supra.