ERICSSON SCREW MACHINE PRODUCTS COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21425.    Promulgated May 4, 1950.

*Theodore Pearson, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The petitioner claims that it is entitled to use the Ecla basis for the assets acquired from Ecla in computing depreciation deductions and equity invested capital because the transaction whereby it acquired the assets was a reorganization within the meaning of section 112 (g) (1) (D). Secs. 113 (a) (6) and (b); 114 (a); 718 (a) (2); and 760. The reorganization definition relied upon is "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred." The petitioner begins with Old Ericsson and Ecla and reasons that both transferred assets to it and immediately after the transfer owned all of its stock. Although the statute mentions only a transfer by one corporation to another whereas here two corporations transferred assets to the petitioner, nevertheless, the petitioner argues that the terms of the statute are met and there is a reorganization where each of the transferring corporations receives stock of the transferee for its assets and the stock thus received by the two transferors gives them control. If this reasoning is sound, at least each transferor must transfer assets for stock and not merely sell, to comply with section 112 (g) (1) (D). The Commissioner contends that the participating parties intended the transfer of assets by Ecla to be a sale, the real consideration for which was to be money rather than stock; in other words, that Ecla was to retain no interest in the transferred assets through ownership of stock of the petitioner and, for that reason, if for no other, the provisions of the statute defining a reorganization were not met.

The president of Old Ericsson, who is also president of the petitioner, was the only witness. He testified that Old Ericsson was at all times fully aware of the possible tax benefits which are the subject

of the present controversy. The Old Ericsson interests were endeavoring to obtain those benefits. Such a purpose is not objectionable, but the steps employed must come within the words and purpose of the statute relied upon. The petitioner might have acquired the desired tax benefits had the plan permitted Ecla to retain an interest in the tranferred assets through ownership of stock in the transferee corporation. Otherwise, the transaction was a sale and the reorganization provisions do not apply and were not intended to apply. *Electrical Securities Corporation* v. *Commissioner*, 92 Fed. (2d) 593; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462. Thus, it is important to determine whether the temporary holding of the petitioner's stock by Ecla was merely a "ritualistic incantation" in an effort to meet the words of section 112 (g) (1) (D), whereas the real intention of the parties was that Ecla should ultimately receive its consideration in cash and should not, when the integral plan was complete, be the owner of any of the stock of the petitioner. Cf. *Sam Pickard*, 40 B. T. A. 258; affd., 113 Fed. (2d) 488; *Wilbur F. Burns*, 30 B. T. A. 163; affd. *sub nom. Bassick* v. *Commissioner*, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592.

The actual steps are set out in the stipulation. Ecla transferred part of its assets to Patents in exchange for all of the stock of Patents, a corporation organized and used solely for the convenience of the parties in these particular transactions. Cf. *Gregory* v. *Helvering*, 293 U. S. 465. Patents then consolidated with Old Ericsson to form the petitioner, Ecla surrendering all of the stock of Patents and receiving 77 shares of the stock of the petitioner. But the agreements and the transactions do not stop there and were not intended to stop there. Ecla gave an option to the Old Ericsson interests to purchase the 77 shares of the petitioner's stock for $5,000 in cash. The written agreements and the pledge of the stock for the loan indicate the necessity which Ecla had for this cash. The actual option recites that "the party of the second part is desirous of acquiring the said stock." Ericsson, who was the party of the second part to that agreement representing the Old Ericsson interests, testified, both on cross-examination and on redirect examination, that the understanding at the time was that the Old Ericsson interests would actually purchase the 77 shares of stock from Ecla for $5,000. Counsel for the petitioner had him later acknowledge that he had a right to exercise the option at any time within two years after August 25, 1942, but his testimony as a whole and the instruments themselves indicate that the Ericsson interests intended and agreed to acquire all of the stock of the petitioner and Ecla was not to own any of it when the transactions were complete. Some corroboration for this conclusion may be found in

the fact that Ecla reported the transaction on its return as a sale and claimed the resulting loss. The exercise of the option and the surrender of the 77 shares by Ecla was one of the steps essential and inseparable from the rest in accomplishing the result which the parties sought when they began their transactions. Thus, Ecla had no stock interest in the transferred assets at the completion of the plan and the continuity of interest through stockholding by each transferor, essential to the petitioner's theory of the alleged reorganization, was lacking.

Although the result reached above is based upon the conclusion that Ecla was to receive $5,000 for the 77 shares of the petitioner's stock temporarily placed in its name and therefore sold its assets instead of transferring them for stock, the justice of it appears also from a broader, less technical view of what happened. The Old Ericsson interests had a right to find some means of investing surplus funds and they apparently accomplished that result. Furthermore, it may be assumed that the acquisition of the Ecla assets contributed in some important way to the accomplishment of that result, although that is not too clear from the evidence. Those assets, which had such a substantial basis in the hands of Ecla, had lost most, if not all, of their value before the petitioner acquired them and Ecla was willing to receive, and actually did receive, for those assets a relatively small amount. Thus the petitioner sought a basis of about $600,000 with correspondingly large tax benefits by the payment of a relatively small amount. Such a result might appear reasonable enough if the persons who had held the equity in the assets while they declined in value were to retain some indirect interest in those assets, thus keeping their chances of ultimate gain or loss still alive. But the reason for such a result is difficult to find where those who indirectly owned the assets while they declined in value have terminated all chances of recoupment of their loss and the corporation claiming the high basis is one in which those persons have no stock interest. Congress has indicated no intention to defer recognition of loss under such circumstances or to give strangers to the loss in value of the assets a basis which would enable them to reap whatever benefits the future might reveal from the use or disposition of the assets. It would be less difficult to understand the Congressional purpose if Ecla had had no agreement to sell the 77 shares, but had, nevertheless, sold them in a later wholly separate transaction, since in that transaction it would have realized its loss and had it recognized for tax purposes.

*Decision will be entered for the respondent.*